## JOHN S. LEHMANN, Respondent, v. HARTFORD FIRE INSURANCE COMPANY, Appellant.

**St. Louis Court of Appeals.    Submitted on Briefs May 6, 1914. Opinion Filed June 2, 1914.**

1. FIRE INSURANCE: Evidence: Admission of Liability: Compromise. In an action on a fire insurance policy, *held* that a statement made by an adjuster of the insurance company, that the company would only give fifty cents on the dollar, was not objectionable on the ground that it was made during negotiations for a compromise, in view of the fact that the evidence disclosed that it was made in an interview between the adjuster and insured relative to the adjustment of the loss and the making of proofs thereof, and not in an effort to compromise.

2. ————: Defenses: Misrepresentations. A fire insurance company was not released from liability because a paster, attached to the policy when the property insured was moved from one building to another, stated that such property was located in a building used as a dwelling, whereas it was a mercantile building, where, at the time the paster was attached, insured stated the true facts to the agent of the company.

3. ————: Sufficiency of Proof of Agency. In an action on a fire insurance policy, evidence *held* to warrant a finding that a broker, through whom the policy was procured, was the agent of insurer, rather than insured.

4. ————: Damages for Vexatious Delay: Sufficiency of Evidence. In an action on a fire insurance policy, evidence *held* to warrant a finding of vexatious delay in payment of the loss, justifying an award of ten per cent damages and an attorney's fee, under Sec. 7068, R. S. 1909.

5. INSURANCE: Damages for Vexatious Delay: Assignability. The right to an award of ten per cent damages and an attorney's fee, under Sec. 7068, R. S. 1909, on account of vexatious delay in payment of the loss, may be assigned, along with the right of recovery by insured.

6. APPELLATE PRACTICE: Damages for Vexatious Appeal. A penalty should not be assessed against an insurance company, under Sec. 2084, R. S. 1909, on the theory that its appeal was vexatious, where, although its main defense was based on a very narrow technicality, it appeared that it was sufficiently penalized by an allowance to plaintiff of ten per cent damages and an attorney's fee in the trial court, for vexatious refusal to pay.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*Fauntleroy, Cullen & Hay* for appellant.

(1) Upon sound principles of public policy, it is held that an offer made by way of sacrifice or concession for the sake of peace, or in settlement or compromise of a disputed claim, is not admissible, regardless of whether the admissions were made orally or in writing, or whether they were made directly to the opponent or expressed to a third person. Peace is of such worth that a reasonable man may well be presumed to seek it even at the cost of his strict right and by an abatement from his just claim. Cullen v. Insurance Co., 126 Mo. App. 412; Meyer v. Frenkil, 116 Md. 411, 82 Atl. 208; Harrington v. Lincoln, 4 Gray 563; Brice v. Bauer, 108 N. Y. 428; Wrynn v. Downey, 27 R. I. 454; Louisville, Etc., R. Co. v. Wright, 115 Ind. 378. (2) Where on the face of the fire policy the property describes a dwelling house, such a statement is a warranty and becomes a part of the contract and the assured cannot recover for a loss unless it is true. Boyd v. Vanderbilt Ins. Co., 16 S. W. 470; Alexander v. Germania Ins. Co., 66 N. Y. 464. (3) The first instruction is erroneous because it holds the company liable for the acts of a broker and treats a broker as if he were an agent. An agent of an insurance company, in obtaining or placing surplus insurance in another company or agency than his own, acts as broker or agent of the insured, and the instruction given by the court was erroneous. Bateman v. Lumberman's Ins. Co., 189 Pa. St. 465; Freeman v. Providence-Washington Ins. Co., 182 Pa. St. 64; Sellers v. Commercial Ins. Co., 105 Ala. 282; Merchants' Ins. Co. v. Union Ins. Co., 163 Ill. 173; Hart-

ford Ins. Co. v. Reynolds, 36 Mich. 502; McElroy
v. British American Assur. Co., 88 Fed. 863. (4)
An insurance broker is ordinarily one who is engaged
in the business of procuring insurance for such per-
sons as apply to him for that service. He is there-
fore usually the agent of the insured and will be so
considered. Wilber v. Williamsburgh Ins. Co., 122
N. Y. 439; United Firemen's Ins. Co. v. Thomas, 92
Fed. 127; Sellers v. Commercial Fire Ins. Co., 105
Ala. 282; John R. Davis Lumber Co. v. Hartford
Fire Ins. Co., 95 Wis. 226; Allen v. German-Ameri-
can Ins. Co., 123 N. Y. 6; Seamans v. Knapp-Stout &
Co., 89 Wis. 171; American Fire Ins. Co. v. Brooks,
83 Md. 22; Northrup v. Piza, 43 App. Div. 284; Arff
v. Star Ins. Co., 125 N. Y. 63; McGrath v. Home
Ins. Co., 88 App. Div. 153; Parrish v. Rosebud Min-
ing Co., 140 Cal. 635; Edwards v. Home Ins. Co.,
100 Mo. App. 695; Turnbull v. Home Ins. Co., 83
Md. 312; Armour v. Transatlantic Ins. Co., 90 N. Y.
450; Fromherz v. Yankton Ins. Co., 7 S. D. 187; Com-
monwealth Ins. Co. v. Fairbank Canning Co., 173
Mass. 161; United Firemen's Ins. Co. v. Thomas, 98
Fed. 127; Hamblet v. City Ins. Co., 36 Fed. 118; Sea-
mans v. Knapp Co., 89 Wis. 171; East Texas Ins. Co.
v. Brown, 82 Tex. 631; Home Ins. Co. v. Eakin, 2
Tex. Ct. App. 665, 14 Ins. L. J. 569; Fame Ins. Co. v.
Thomas, 10 Bradw. 545; Hartford Ins. Co. v. Rey-
nolds, 36 Mich. 502. (5) A mere insurance broker
cannot be converted into an agent of an insurance
company without evidence of some action on the part
of the company or of facts from which a general au-
thority to represent it might be fairly inferred. Allen
v. German-American Ins. Co., 123 N. Y. 6. And
the company is not bound by the broker's knowl-
edge. Bradley v. German-American Ins. Co., 90
Mo. App. 369; McFarland v. Peabody Ins. Co., 6 W.
Va. 425; Fame Ins. Co. v. Mann, 4 Bradw. 485; Ben
Franklin Ins. Co. v. Weary, 4 Bradw. 74; Devens v.

Mechanics' & Traders' Ins. Co., 83 N. Y. 168; Royal
Ins. Co. v. McCrea, 8 Lea, 531; Fire Assoc. v. Ameri-
can Cement Co., 84 S. W. Rep. 1115; East Texas Ins.
Co. v. Brown, 82 Tex. 631; Mellen v. Hamilton Ins.
Co., 5 Duer, 101; 17 N. Y. 609; Fire Assoc. v. Hag-
wood, 82 Va. 342, 17 Ins. L. J. 876. (6) The first
instruction is erroneous for the further reason it in-
vades the province of the jury and declares that the
facts hypothesized therein establish agency as a mat-
ter of law. Winter v. K. of P., 96 Mo. App. 102;
Glover v. Duhle, 19 Mo. 360; Lamb v. Bush, 49 Mo.
App. 341. (7) A refusal to pay, to justify the in-
fliction of a penalty or attorney's fees, must be willful
or without reasonable cause, and this question of will-
fulness will not be determined by the outcome of things
at the trial, but by the appearance before the trial as
judged by a prudent and reasonable man, and there
is no evidence in this case which authorized the court
to submit the issue of vexatious delay and conse-
quent damage and attorney's fees to the jury, and
the finding of the jury is wholly without evidence to
support it. Rogers v. Insurance Co., 157 Mo. App.
671; Blackwell v. American Central, 80 Mo. App.
75; Mack v. Lancashire Ins. Co., 4 Fed. 59. (8)
Plaintiff's instruction on vexatious penalties is erro-
neous, because it does not define "reasonable cause."
Jordan v. Moulding Co., 72 Mo. App. 325; Stevens
v. Crane, 37 Mo. App. 495; Dry Goods v. Schooley,
66 Mo. App. 406; Bowles Co. v. Hunter, 91 Mo. App.
337; Mulderig v. Railroad, 116 Mo. App. 672. (9)
Penalties and attorney's fees are created by statute
and the cause of action based thereon is not assignable,
and the right to statutory penalties and attorney's
fees is a personal right, limited to the person who
suffers the loss, and are recoverable by him only and
not by an assignee. R. S. 1909, Sec. 1729; Lumber
Co. v. Realty Co., 138 N. Y. Sup. 829; Lloyd v. Nat'l
Bank of Kan., 5 Kans. App. 512, 47 Pac. 575; McGee

v. McCann, 69 Me. 79; McBratney v. Railroad 17 Hun, 385.

Lehmann & Lehmann for respondent.

(1) The writing of a rider in an insurance policy is a function of the insurance company. When the insurance company allowed Klobasa to write the provisions of their policy he was acting for them and if he made a mistake therein, it was their mistake and the assured cannot be prejudiced thereby. Langford v. Ins. Co., 97 Mo. App. 79. (2) By permitting Klobasa to put a paster on their policy that he was "Manager of their St. Louis Branch," the insurance company is estopped to deny this agency. Baker v. Railroad, 91 Mo. 152; 22 Cyc. 1434; Queen Insurance Co. v. Bank, 111 Fed. 697; Rosencrans v. Ins. Co., 66 Mo. App. 352. (3) The direct, positive and uncontradicted evidence of Schulte, the confessedly duly authorized agent of defendant, that in this particular case Klobasa was acting as agent for defendant is binding on defendant. Hill Bros. v. Bank, 100 Mo. App. 230. (4) The fact that White dealt with Klobasa as agent, together with the fact that defendant was aware that its official agent Schulte exchanged business with Klobasa, and that it received the premium and issued the policy through Klobasa made Klobasa the Company's agent. Queen Ins. Co. v. Bank, 111 Fed. 697; May v. Assurance Co., 27 Fed. 260; Westerman v. Ins. Co., 32 Pac. 458; McGraw v. Ins. Co., 54 Mich. 145; McElroy v. Ins. Co., 94 Fed. 990; Ins. Co. v. Hartwell, 123 Ind. 177; Ins. Co. v. Wiard, 59 Neb. 451; Rosencrans v. Ins. Co., 66 Mo. App. 352. (5) The verdict and judgment are manifestly for the right party and the judgment should therefore be affirmed. Jones v. Ins. Co., 173 Mo. App. 1; R. S. 1909, Sec. 2082. (6) The remark of Warfield was not during negotiations for

a compromise, but in connection with White's proof of loss and was admissible. Cullen v. Insurance Co., 126 Mo. App. 412; Mason v. Insurance Co., 150 Mo. App. 17. (7) The misdescription of the property, if conceded, did not avoid the policy. Langford v. Ins. Co., 97 Mo. App. 79. (8) Instruction two of the court's own motion is abstractly correct. A grocery store in one room of a dwelling house does not as a matter of law change the hazard. This was a question for the jury. Sec. 7024, R. S. 1909; Hanna v. Ins. Co., 109 Mo. App. 156. There was no evidence on which to base this instruction whatsoever, as the only testimony was that White informed Klobasa of the grocery store. Its giving was error against respondent. In getting any instruction at all on this theory appellant got more than it was entitled to and even if erroneous, the error is harmless as to appellant. (9) Plaintiff's instruction on vexatious penalties follows the form approved by the Supreme Court. Keller v. Ins. Co., 198 Mo. 440. (10) The statute on penalties and attorney's fees makes no distinction between the assured and his assignee, but runs in favor of plaintiff in an action on an insurance policy. An assignee can therefore recover the penalty and attorney's fee. Sec. 7068, R. S. 1909; Jones v. Insurance Co., 173 Mo. App. 1. (11) This appeal is without merit and the judgment should be affirmed with ten per cent damages. R. S. 1909, Sec. 2084; Wallace v. Ins. Co., 157 S. W. 1028.

REYNOLDS, P. J.—One White, desiring to procure insurance on certain household goods, situated in his residence in the city of St. Louis, asked one Ver Steeg, a real estate agent, to procure the insurance for him. Ver Steeg went to one Klobasa, an insurance agent or broker, and applied for the insurance. It appears that Klobasa, for some reason and following a custom prevailing between insurance

agents and brokers in St. Louis, went to one Schulte, who was also engaged in the insurance business and asked him to write the policy in one of the companies for which Schulte was agent. Schulte gave Klobasa a policy in the Hartford Fire Insurance Company, insuring household and kitchen furniture belonging to White and his family, the policy to cover the property "while contained in a frame building occupied as a dwelling" by White and situated at 5936 Elmbank avenue in the city of St. Louis, the amount being $350. Klobasa delivered this policy to Ver Steeg, who delivered it to White, White paying the premium. The policy was for the term of three years from the 15th of April, 1910. Intending to remove to Richmond Heights in St. Louis county, White went to Ver Steeg and asked to have the policy transferred so as to cover his household effects in the new location. Ver Steeg referred him to Klobasa, whose name appeared upon the back of the policy as the agent or broker, the policy, however, countersigned by Schulte as agent for the insurance company. Going to the office of Klobasa, White told the young man in charge of the office of his intention to remove from the city into the county and told him that he wanted the policy transferred out to 31 Sunset avenue, Richmond Heights, in St. Louis county; that he had moved to that place. The young man asked him what kind of a place it was and White told him it was a two-story house and that there was a storeroom on one floor and that he and his family lived upstairs, occupying one room on the ground floor as a kitchen. The young man told White that it would cost him a little more money, to which White replied, "All right, I will have to have the policy." That was all that was said between them, according to White, and White left the policy with this young man in Klobasa's office to have the transfer indorsed on it. The foregoing is the testimony of White and it was not con-

tradicted. When the policy came back to White, which it apparently did through Klobasa's office, it had what is called a "paster" upon it, which acknowledged the receipt of $1.40 additional premium on the policy of the Hartford Insurance Company, "being an increase of rate hereon of fifty cents (rate as increased being $1.50), the assured hereunder having moved into the frame dwelling house, situated No. 31 Sunset avenue, Richmond Heights, St. Louis county, Missouri." This was signed, "F. J. Schulte, Agent." It appears that it was filled out in Klobasa's office by him or his employees and sent to Schulte, who signed it as above and returned it to Klobasa.

It appears from the testimony in the case, as before noted, that Schulte was the agent of the Hartford Fire Insurance Company, and that Klobasa was an insurance agent and broker and also the manager of some other insurance company, and agent for other companies, and that he and Klobasa were in the habit of exchanging business under some arrangement by which they divided commissions. Under this, if one of them received an application for insurance which for any reason he did not care to write in his own company, he turned it over to the agent of some other company with whom he had friendly relations and that agent would countersign and issue a policy from his own company, turning it over, however, for delivery to the agent from whom the business had come to him. It was under this arrangement that Schulte wrote the policy in the Hartford Fire Insurance Company, turned it over to Klobasa, and Klobasa delivered it to White. On the outside fold of the policy, in large type appears the name of Klobasa, as "manager," giving his office address.

Testifying as a witness for defendant, Mr. Schulte was asked by the court this: "Now as a matter of fact was Klobasa acting as agent for your company?" He answered, "Yes, sir." By the Court: "Did

he act for your company as agent in soliciting insurance?" Ans. "Well, not directly, No, sir. Q. The fact of the matter seems to be that he represented one company about as much as he represented another? Ans. Yes."

White made out the check in each instance to the order of Klobasa and Klobasa settled for it with Schulte. Some time after the issue of the policy, about March 14, 1911, the property covered by the policy was totally destroyed by fire. White notified Klobasa of the loss and Klobasa sent him to the office of the New York Underwriters, telling him they were the people to adjust it. White went there and was told that the manager of that office was not in; that he was in New York, and that it would be several days before he would return but they told him to make up a list of the goods he had, which he did, putting a value on them, and presented that to the manager of the New York Underwriters in St. Louis. This manager, after the list had been made out, told White to come back in three or four days. When White went back the manager said: "Well, I am sorry, Mr. White; you have had awful bad luck out here, but all we can do is to give you fifty cents on the dollar for this business." White, refusing to accept this, assigned his interest under the policy and all claim he might have to damages for a vexatious refusal and to attorney's fee, to one John S. Lehmann, the assignment made as collateral to some indebtedness between them. Thereupon Lehmann instituted his action before a justice of the peace on the policy, filing that, to recover against the Hartford Fire Insurance Company. That company not appearing, judgment went in favor of Lehmann, from which the company appealed to the circuit court, where on a trial anew before the court and a jury a verdict was returned in favor of Lehmann for the face of the policy, $350, with ten per cent damages

for vexatious delay, and $100 attorney's fee. From this, interposing a motion for new trial as well as one in arrest, defendant perfected its appeal to this court. The defense was that the use of the building was mis-described; that it was not to be classed as a "dwelling," but as a "mercantile building," by reason of the use of part of it as a store, and that as a higher rate should have been charged, and White had misrepresented the use of the building, plaintiff could not recover.

There was no dispute that the building specified in the policy was occupied in part as a grocery and that, according to the classification adopted by the insurance companies, the building should have been classified as a mercantile building, the rate upon which was $3.80 per $100 for a term of three years, whereas as a dwelling the rate was $1.50, the rate charged and collected here.

Learned counsel for appellant make twelve points or assignments of error. In the view we take of the case it is not necessary to consider all of these in detail. The decision of the case lies within a narrow compass.

It is insisted that the statement of the manager of the New York Underwriters, whom it appears were the adjusters, made to the insured, to the effect, "You have had awful bad luck out there, but all we can do is to give you fifty cents on the dollar for this business," was improperly received in evidence, it being claimed that this was said in an effort to compromise and in negotiations for a compromise. Counsel cites us, in support of this claim, to Cullen v. Insurance Company of North America, 126 Mo. App. 412, 104 S. W. 117. The decision in that case not only does not support the contentions of counsel for appellant but is directly against them. There, as here, like evidence was held to be admissible, the statement hav-

ing been made, not in an effort to compromise, but in an interview between the parties looking to the adjustment of the loss and preparatory to making the necessary proofs, and prior to the institution of any action on the part of the representatives of the insurance company of any liability. It is true that in the Cullen case it is held that conversations held afterwards, and after suit brought were not admissible, because clearly had in an effort to compromise an action then pending. [See also Mason v. Agricultural Ins. Co., 150 Mo. App. 17, 129 S. W. 472.]

It is urged that the change in the location and from a dwelling to a store, it being stated in the paster upon which the transfer was allowed that the new location was also a dwelling and to be occupied as a dwelling, was a statement amounting to a warranty, became a part of the contract, was a misrepresentation as to a material matter, and that the insured cannot recover for a loss. Without denying the proposition that it related to a material matter, we hold that the point made is inapplicable here. The testimony is that the insured made no misrepresentation to Klobasa, but on the contrary notified Klobasa, or Klobasa's clerk, that the building to which he intended to transfer the policy was occupied in part by a grocery and in part as a residence. If there was any wrong classification of the risk, it occurred in the office of Klobasa and was made by him in the face of a statement of the truth by the insured. The insured made no concealment or false statements to Klobasa, and if Klobasa was the agent of the insurer and not of the insured, the insured is not responsible for the act of Klobasa in misstating the facts to his company, or the company for whom he was acting.

That brings us to consideration of the main question in the case, namely, as to the capacity in which Klobasa was acting; whether he was acting as agent for the insured or for the insurance company. That

question was fully and fairly submitted to the jury and it found against the contention of appellant. It is urged that Klobasa was a mere broker and the agent of the insured. We think that the facts of this case bring it very closely within those present in Queen Ins. Co. v. Union Bank & Trust Co., 111 Fed. Rep. 697, a decision by the United States Circuit Court of Appeals for the Sixth Circuit, the opinion delivered by Circuit Judge DAY, now Mr. Justice DAY.

In that case, quoting from the syllabus, which is a brief and correct report of the opinion on the point in decision, the facts are thus stated:

"The owner of property applied to a firm of insurance agents, representing a number of companies, for insurance thereon. The firm—not desiring to write the insurance in one of its own companies—in accordance with a custom prevailing among the insurance agents of the city, turned the application over to the agent of defendant, who issued the policy and delivered it to the firm, which pasted its business card thereon and delivered it to the insured, collecting the premium, which was paid to defendant; the commissions being divided between the two agencies, as was the custom. The transaction was in good faith, and the insured knew no other agent therein than the firm."

Under such facts, which are substantially the facts here, it is held that the firm was not the agent of the insured in the transaction, but the agent of the defendant insurance company, which must be presumed to have had knowledge of the custom, and, by receiving the premium and assuming the risk, ratified the agency of the firm through whom the application was received in accordance with such custom. Rosencrans v. North American Ins. Co., 66 Mo. App. 352, is in line with this. See also Boward v. Bankers Union, 94 Mo. App. 442, l. c. 450, 68 S. W. 369. We are referred to no decisions of our own State which

hold to the contrary. There was abundant evidence in the case on which the jury were warranted in finding that Klobasa was the agent of the insurance company, not of the insured, and that the insurer, through its agent, Klobasa, knew the facts. [Manning v. Connecticut Fire Ins. Co., 176 Mo. App. 678, 159 S. W. 750.]

It is argued that this is not a case for the infliction of the penalty for vexatious delay. That question and the allowance of an attorney's fee in consequence of that, as provided by section 7068, Revised Statutes 1909, was properly submitted in the instructions and the finding of the jury is warranted by the facts in the case.

It is further argued that there can be no assignment of the claim for damages for vexatious delay and attorney's fee. The section of the statute referred to is thus—in part: "In any action against any insurance company to recover the amount of any loss under a policy of fire, life, marine, or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages," etc. · It will be observed that this right of recovery in case of loss, is not confined to the insured, but is given, "in any action against any insurance company," to the plaintiff—the court or jury may "allow the damages," to the plaintiff.

In Jones v. Prudential Ins. Company of America, 173 Mo. App. 1, 155 S. W. 1106, the action was by an assignee of the policy and a verdict and judgment allowing him damages and attorney's fee for vexatious delay was affirmed by our court.

We see no error to the prejudice of the appellant in the instructions given at the instance of plaintiff or by the court of its own motion, nor any error in the refusal of the court to give the instructions asked by defendant.

The testimony was without contradiction that the value of the goods destroyed by the fire was in excess of the insured amount.

We are asked to inflict the penalty of ten per cent as for a vexatious appeal. While we think that the defense in this case is on a very narrow technicality, seeking to avoid liability on account of what is claimed to be an erroneous classification, designating the building as a "dwelling" instead of as a "mercantile building," and so liable for a higher rate, the evidence is that the error was that of the clerk of one found to be the agent of the insurer, the error, if one, made in the face of a statement by the insured of the exact use of the building, we think that the defendant has been sufficiently penalized by the verdict and judgment and will not impose any additional penalty.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.