H. E. BERGERSON, RESPONDENT, v. GENERAL INSURANCE COMPANY OF AMERICA, OF SEATTLE, WASHINGTON, A CORPORATION, APPELLANT. —148 S. W. (2d) 812.

Kansas City Court of Appeals.   March 6, 1941.

*Ernst & Williams* and *Hogsett, Murray, Trippe, Depping & Houts* for appellant.

*C. W. Crossan, Clarence C. Chilcott, Bruce DuBois* and *Bruce Barnett* for respondent.

SHAIN, P. J.—This is an action for loss by fire of goods and chattels belonging to Frank N. Eddy and Hallie D. Eddy, to whom the defendant had duly issued its policy of insurance while situate in a frame shingle-roofed building at 1206 Swift Avenue, North Kansas City, Clay County, Missouri. The amount of insurance is stated at $3000, and premium of $32.40 was duly paid to defendant and the insurance took effect February 9, 1933.

Prior to the destruction of the property by fire, to-wit, October 10, 1933, the property had been removed from 1206 Swift Avenue, aforesaid, to a frame building one-half mile north of Martin City, Missouri.

The plaintiff herein is an assignee of the Eddy's. Plaintiff alleges that the policy was in full force and effect at the time the property was destroyed by fire.

The defendant denies that the policy was in effect at the time of its destruction for the reason that under the terms of its policy, the

property was insured "while located and contained as described herein, and not elsewhere, to-wit: while said property is situated in the shingle-roofed building at 1206 Swift Avenue, North Kansas City, Clay County, Missouri."

The plaintiff contends that defendant agreed to insure the goods in the new location and the defendant denies that any such agreement to that effect was ever had or made, and therein lies the principal issue herein.

This cause was once before reviewed by this court and in our opinion, 105 S. W. (2d) 1015, this court held that the question of liability was one of fact to be determined by the jury. However, the judgment for plaintiff in the former trial was reversed and remanded for error in instruction.

Upon a retrial in the circuit court, a jury verdict for plaintiff was returned as follows:

"We the jury, find the issues for the plaintiff and do assess his damages on the policy at $2,700.00 with interest thereon of $895.00 and we do further find that defendant's refusal to pay was vexatious and do assess a penalty of $270.00, and an attorney fee of $750.00

"Charles A. Boyd,
"Foreman."

Judgment was duly entered in accord with verdict and defendant duly appealed. We will continue to refer to respondent as plaintiff and to appellant as defendant.

The defendant's assignments of error are voluminous in number and argumentative in reasons. Twenty-six assignments are made covering fourteen pages of closely printed matter. However, under points and authorities defendant has consolidated its complaints under eighteen specific points.

Defendant's first assignment is based upon evidence given by plaintiff's witness, Mrs. Eddy, as follows:

"Q. Mrs. Eddy, state what your conversation was with Mr. Ducate?

"MR. WESTMORELAND: I object to that question. It is the same question he asked.

"THE COURT: I think you opened that up.

"MR. WESTMORELAND: Not any statement or conversation.

"THE COURT: You asked if the adjuster didn't tell her certain things. She said he didn't. Now she can tell what was said.

"To which action, order and ruling of the court, the defendant then and there at the time excepted, and still excepts.

"A. Mr. Ducate came out the second time. The first time we were living in a tent and I said, 'Mr. Ducate, we will go over to where we had the loss' and he said—'No need. I have been over there and I will tell the world it was a total loss.'

"Q. Tell anything else? A. He said— 'I will be back' and he said—'Mrs. Eddy, will you take five or six hundred dollars—'

"Q. (Interrupting) : Leave out that part of it."

The defendant makes claim that the above "remarks, statements and evidence made by plaintiff's witness, Hallie D. Eddy, in the presence and hearing of the jury concerning an alleged offer of compromise and settlement were prejudicially erroneous and prevented the defendant from having a fair and impartial trial."

As to said statement of the witness, the defendant duly objected and asked some be stricken and that court declare a mistrial. The court in response stated to the jury as follows:

"THE COURT: Plaintiff's request that the court instruct the jury to disregard the impartial answer of the witness. Gentlemen of the jury you will not regard the statement as to the five or six hundred dollars. Motion to declare a mistrial and discharge the jury is by the court refused."

In the former trial of this case, Mrs. Eddy was permitted to state as to a purported offer of settlement. In the opinion of this court, 105 S. W. (2d), *supra,* admonition was given wherein it is stated "plaintiff should scrupulously avoid getting before the jury the question of an offer of settlement on the part of defendant."

The injectment into the case of the language used by the witness is unfortunate. However, the trial court pulled out the nail and puttied up the hole as best he could and we conclude that the showing is not sufficient within itself to justify a reversal.

From a careful consideration of points presented by defendant, we find that quite a number of same were before us in the former appeal. It follows, that as to these points, our former opinion is the law of the case unless on such issues there is presented herein a material change in the testimony from that presented in the former trial.

In point two of its brief, the defendant urges that it was error to refuse its offered peremptory instructions in the nature of demurrer to the evidence.

The evidence as to the issue of liability for loss by fire, we find, is practically the same as in the former trial wherein this court held there was presented an issue of fact for the jury. [See 105 S. W. (2d) 1017-1018.]

There is, however, evidence in the trial herein under review that did not appear before and we conclude that our conclusion will be better understood by including herein testimony that was given in this hearing. However, before doing so we call attention to the fact that there is shown some confusion in the trial of this case due to the fact that the insurance was purchased through a broker. It can clearly be inferred from the evidence that the insured was not aware of the limitation of authority of the broker; in other

words, that the broker was agent of defendant only in respect to delivery of policy and collection of premiums and, with limited knowledge as to the situation, the insured continued to deal direct with the broker and on a previous occasion by communication with the broker alone had secured a desired endorsement upon the policy.

In the trial now before us for review, the defendant called Mr. Miller, the broker, as a witness and his testimony clarifies the situation to some extent.

In the direct examination of Mr. Miller, the following questions and answers appear:

"Q. Assuming that this policy was written on or about February 9th, 1933, state what, if anything, you next heard about the writing of this policy? A. Craven left our employ sometime later and along about September someone called and said they were talking for the Eddys and they were contemplating moving and wanted to tell us that.

"Q. This party talked to you over the telephone? A. Yes, sir.

"Q. Previous to that time did you ever see Eddy's home or meet any of the Eddy family? A. No, sir.

"Q. This party talking over the phone represented they were talking for the Eddys? A. Yes.

"Q. What did you do about that? A. I called Miss Rogers and said the Eddys contemplated moving and I would let her know anything further I heard.

"Q. What did she say? She said to let her know anything I heard."

On cross-examination of Mr. Miller, the following appears:

"Q. Now, I will ask you again, Mr. Miller—I will ask you again if along about September 12th, somebody—some of the Eddys called you up and told you they, were contemplating moving close to Martin City? A. I remember somebody called and said they were contemplating moving.

"Q. I will ask if in the same deposition this question was not asked and you made this reply—'Question: Well, what did he tell you? Answer: Well, he said they were contemplating moving. Question: Where to? Answer: It is kind'a hazy like but he told me, as I recall, he said south of town, south of Kansas City, close to Martin City. I would not be positive but he said south.'

"MR. TRIPPE: I object to that. It does not contradict anything he said on the witness stand.

"THE COURT: Objection overruled.

"To which action, order and ruling of the Court, the defendant then and there at the time excepted, and still excepts.

"Q. Just answer the question. A. I made that statement.

"Q. That was true when you made it? A. Yes, sir.

"Q. And it is true now? A. The statement in there is true.

"Q. And you knew on the 12th day of September, when you received the telephone call, they were contemplating moving to Martin City? A. Yes.

"Q. Your best recollection is he said moving to Martin City?

"Mr. Westmoreland: I object to that. He says they are both true.

"Mr. Miller, you are testifying to everything here to the best of your recollection? A. Yes, sir.

"Q. That is all we want you to do. Now, you told them you would notify Clark? A. I told them I would report this to Clark.

"Q. You called up Miss Rogers and told her about it? A. Yes, sir.

"Q. And Miss Rogers says to you that that was out of the city limits and you had better find out exactly where they were moving? A. I don't remember whether it was at that time that was discussed. It seems to me now that it was on the second call."

There is conflict between testimony of Mrs. Eddy and Mr. Miller as to what occurred in the office of defendant's agent. Mrs. Eddy testifies that Miller was present when the conversation was had with Miss Rogers in the office of the insurance agency.

Mrs. Eddy testified as follows:

"Q. Mrs. Eddy, did Mr. Miller say anything to Miss Rogers, in your presence, about the policy? A. Yes, sir.

"Q. What did he say? A. He said, was that taken care of and—

"Q. (Interrupting): What taken care of? A. If the policy was transferred."

After colloquy between the court and lawyers, the further questions and answers appear:

"Q. Mrs. Eddy, I want you to tell the jury what Miss Rogers said had been taken care of?

Mr. Williams: This applies to all this line of testimony.

"The Court: You may testify as to any conversation you had there in regard to this matter of insurance with Miss Rogers, and I will overrule the objection.

"To which action, order and ruling of the Court, the defendant then and there at the time excepted and still excepts.

"Q. Miss Rogers said the transfer had been made.

"Q. What did she do? A. She walked over to the cabinet and some files and looked at some papers and she said it had been taken care of."

As to the above incident, Mr. Miller testifies as follows:

"A. I took them up and introduced them to Miss Rogers and told her they had a loss and left.

"Q. You don't know what happened there? A. No, sir."

An issue of fact was presented and as the jury found for plaintiff,

it does not lie in our province to determine the matter differently from finding of the jury.

Whatever duty devolved upon defendant under the situation, the testimony on part of defendant is that it did nothing until after the loss. It was within the province of the jury to believe Mrs. Eddy's testimony.

Miss Rogers when called as a witness for defendant admitted as to the notice imparted by Mr. Miller early in September. On cross-examination of Miss Rogers, the following questions and answers appear:

"Q. Do you know about Martin City? A. I know there is no fire protection there.

"Q. How long have you known that? A. I don't know.

"Q. But you know there is no fire protection at Martin City? A. Yes, sir.

"Q. And you knew at that time you could not transfer the policy? A. Yes, sir.

"Q. What did you tell him? A. Told him if they moved that we would have to pick up the policy."

Shortly before the fire, the defendant's agent was notified by Mr. Miller that the goods were being moved to Martin City. When so notified, Mr. Miller says that Miss Rogers rely was, "I will have to have the legal description of that property." Such reply is not consistent with the declaration, *supra*, "Told him if they moved that we would have to pick up the policy."

It is further shown that Miss Rogers was asked and answered questions as follows:

"Q. I will ask if in your conversation with Mr. Ducate—that is telephone conversation—if you didn't tell him that these people— meaning the Eddys—had just moved and you had not completed the removal form? A. I probably said that.

"Q. You would recall when your deposition was taken? A. I said that, but you want to know what I meant?

"Q. No, I want to know if you said it. A. I said it.

"Q. I will ask if at the last trial, if you didn't tell the court the same thing—if you didn't say, in regard to filling out the removal form that you had not completed it? A. I had not completed it.

"Q. Did you say it? A. Yes.

"Q. That was true that you had not completed the removal form? A. Yes.

Mr. Chilcott: That is all.

Re-Direct Examination by Mr. Westmoreland.

"Q. Just explain what you meant when you said you had not completed the removal form?

"Mr. Chilcott: Just a minute. This is the English language and it is not necessary to explain.

"THE COURT: Explain your answer. Objection overruled.

"A. I had not made the removal permit."

We note in reference to the testimony of Miss Rogers, that while she says she knew early in September that the transfer could not be made, still the defendant in its letter of December 20, 1933, denying liability and sending check for unearned premiums, states as follows:

"We are enclosing herewith return premium with interest, figured from October 9th, 1933. Should you object to this tender being made in the form of check, if you will so advise us, we will make the tender in cash."

According to the testimony of Mrs. Eddy, they moved into the house in Martin City on Sunday, October 8th, and the fire occurred on October 10th. From the above, it can be inferred that defendant charged for and admits coverage up to the day before the fire.

We conclude from the evidence before us on this review that an issue of fact was made for the jury. We, therefore, rule against defendant on its point two.

Under point three, defendant urges error in giving plaintiff's instruction No. 1.

Instruction No. 1 complained of is plaintiff's principal instruction, covering the whole case and is as follows:

"The Court instructs the jury that it is admitted in this case that the contract of insurance mentioned in plaintiff's petition was made with defendant.

"And if you believe and find from the evidence that said contract of insurance was upon and covered the household goods mentioned in evidence while located at 1206 Swift Avenue, North Kansas City, Missouri; that H. E. Clark and Trilby E. Rogers were the agents of defendant in making said contract of insurance for defendant and that after the making of said contract of insurance the defendant was notified that Frank N. Eddy & Hallie D. Eddy contemplated removing said household goods from 1206 Swift Avenue, North Kansas City, Missouri, to the house referred to in evidence located about one and one-half miles north of Martin City, Missouri, and that thereafter and at the time referred to in evidence said property was so removed and that the said Trilby E. Rogers was thereafter and before the fire referred to in evidence, notified of said removal of said household goods and requested to transfer said insurance to said household goods in its new location, and that defendant consented and agreed to said removal from the building referred to in evidence in North Kansas City, Missouri to the building referred to in evidence situate one and one-half miles north of Martin City, Missouri, and to the transfer of said insurance coverage to said household goods in its new location and that Frank N. Eddy and Hallie D. Eddy and the members of their family referred to in evidence were the sold owners of said household goods and that said household goods were destroyed

by fire in said new location at the time referred to in evidence, and that prior to the institution of this suit on August 15th, 1935, Frank N. Eddy and Hallie D. Eddy had assigned and transferred their cause of action herein, if any, to plaintiff, then your verdict will be for plaintiff.''

The judgment was reversed in our former review for error in plaintiff's principal instruction. The present instuction, we conclude, is so drawn as to avoid error pointed out in our former opinion.

Defendant urges that, ''the instruction assumed as true controverted facts in the case; it submitted issues to the jury upon which there was no evidence; the instruction was not supported by the evidence.''

Defendant cites Orris v. Chicago, R. I. & P. Ry. Co., 279 Mo. 1, 214 S. W. 124, and Lamport v. Assurance Co., 272 Mo. 19, 197 S. W. 95.

It is fundamental that instructions assuming as true controverted facts are in error. We go to defendant's printed argument to ascertain wherein defendant's contention consists.

Defendant insists that the first paragraph of the instruction assumes a controverted fact.

We note that the admission in the second paragraph of defendant's answer is in substance the same as stated in the instruction. Defendant's theory seems to be based upon its conclusion that by reason of fact that plaintiff was urging waiver as to location of goods that such constituted a situation similar to suit on a reformed contract and that the jury might be lead to the conclusion that the question of waiver was declared as admitted. We conclude that when the instruction is read as a whole that no such conclusion can be drawn.

To a better understanding of our conclusions as to defendant's point three and as well to a better understanding as to other points, we quote two paragraphs from our former opinion in this case. In our opinion, 105 S. W. (2d) 1018, (5) it is said:

''Complaint is made of the giving of plaintiff's instruction No. 4 which, among other things, submits the matter of an agreement to insure the goods at the new location, and the overruling of defendant's objection to the testimony concerning Miss Rogers' admissions upon which the instruction was based. Although Miss Rogers was plaintiff's witness and denied that she stated to Miller, in the presence of Mrs. Eddy, 'Well, it has been taken care of, and you will see Mr. Ducate,' and denied that the transfer was made the jury was at liberty to believe the testimony of Mrs. Eddy that Miss Rogers did make this statement. [Frankel v. Hudson, 271 Mo. 495, 196 S. W. 1121.] If she did, then her statement was evidence, for the jury's consideration, as to whether the defendant, H. E. Clark & Company, expressly consented to insure the property at its new location.''

On l. c. 1020 of our opinion (12-14), it is said:

''Defendant was under the obligation to return the unearned

premium to the insured within a reasonable time after it had notice of the loss and, if it failed to do so, it waived the provision of the policy concerning the place where the goods were insured and, under the facts in this case, whether the tender of the premium on December 20, 1933, was within a reasonable time, is a question for the jury.''

We find no reversible error in plaintiff's Instruction No. 1.

Defendant in its fourth point challenges the correctness of plaintiff's Instruction No. 2.

Instruction Two reads as follows:

''The Court instructs the jury that it is admitted in this case that the contract and policy of insurance mentioned in plaintiff's petition were made with defendant.

''And if you believe and find from the evidence that said contract and policy of insurance were on and covered the household goods mentioned in evidence while located at 1206 Swift Avenue, North Kansas City, Missouri; that H. E. Clark and Trilby E. Rogers were the agents of defendant in making said contract and policy of insurance for defendant and after the making of said contract and policy of insurance defendant was notified that Frank N. & Hallie D. Eddy contemplated removing said household goods from 1206 Swift Avenue, North Kansas City, Missouri, to the house referred to in evidence located one and one-half miles north of Martin City, Missouri, and that defendant, before the fire hereinafter mentioned, was notified and knew that said household goods had been removed to said new location and that defendant had a reasonable time thereafter in which to have cancelled said contract and policy of insurance but failed to do so and permitted said policy of insurance to remain in the possession of Frank N. Eddy or Hallie D. Eddy with no cancellation of same, if so, and that Frank N. Eddy and Hallie D. Eddy and the members of their family referred to in the evidence, were the sole owners of said household goods and that said household goods thereafter were destroyed by fire in said new location at the time referred to in evidence and that defendant was duly notified of said fire and that defendant failed to pay or offer to pay to Frank N. Eddy or Hallie D. Eddy the unearned premium on said contract and policy of insurance within a reasonable time after the notice of said fire, and that prior to the institution of this suit on August 15, 1935, Frank N. Eddy and Hallie D. Eddy had assigned and transferred their cause of action, if any, herein to plaintiff, then your verdict will be for the plaintiff.''

The defendant, as to Instruction Two, urges as follows:

''This instruction assumed as true controverted issues in the case, submitted the question of waiver to the jury when there was no evidence of any waiver in the case, and submitted to the jury the question as to whether the defendant had waived the insuring clause of the policy which was not a subject of waiver, submitted the question

of alleged failure to tender the premium when this was not and could not constitute a waiver in the case, submitted the question to the jury as to whether the defendant had reasonable time within which to cancel the policy of insurance between the time when it was notified of the loss on October 9, and the time of the fire which was the morning of October 10, when there was no evidence to base this submission and the evidence conclusively showed that the defendant had neither time nor opportunity to cancel the policy between the time the defendant was notified of the removal and the time of the fire, submitted the question of waiver prior to the loss on which there was no evidence and submitted other issues to the jury which were not borne out by the evidence.''

As to assumption of controverted issues, the same claim as presented as to instruction one is made and we need not comment further as to same.

The contention of defendant is clearly based upon its theory of nonliability and elimination of issue of waiver. This court on practically the same facts as are in evidence herein fully adjudicated as to these matters against the defendant. The act of the trial court in giving Instruction Two is justified by the law as declared in our former opinion. We conclude no error in giving the instruction.

Defendant's pont five is so cumulative of claims that we set same out in full as follows:

''The trial court erred in giving plaintiff's Instruction No. 3; erred in the admission of the testimony of witnesses Chilcott, McKnight and Redmon, erred in refusing defendant's requested Instructions L, Q and R.''

Instruction No. 3 submits the question of vexatious delay and consequent penalties and attorney fees.

The testimony referred to is testimony offered upon part of plaintiff on the question of value of attorney's services.

Instruction L is as follows:

''The Court instructs the jury that the plaintiff cannot recover any penalties or attorneys' fees in this suit because under the law no assignment could be made by Frank and Hallie Eddy of their right, if any, to collect penalties or attorneys' fees from defendant.''

Instruction Q is as follows:

''The Court instructs the jury that there can be no recovery in this suit for penalties or attorney's fees and your finding on this issue shall be for the defendant.''

Instruction R is as follows:

''The Court instructs the jury that there is no evidence in this case of vexatious refusal to pay the loss in question and you shall allow plaintiff nothing by way of penalties or attorney's fees.''

On the question of penalty and attorney fees being an issue of fact in this case, we conclude from an examination of the record that

we are not justified in saying as a matter of law that the facts and circumstances in evidence failed to show facts from which inference can be drawn that the delay was unwarranted and vexatious within the meaning of Section 5929, Revised Statutes of Missouri, 1929. We, therefore, conclude no error in giving plaintiff's Instruction 3 and no error in refusing defendant's Instruction L, Q and R. [Hicks v. Life Ins. Co., 196 Mo. App. 162.]

Counsel for defendant makes an able and somewhat convincing argument to the effect that attorney fees and penalty provided for in Section 5929, *supra,* are purely penal and not assignable. However, defendant cites no authority wherein such issue under the statutory provision is involved.

The issue was raised in a class reviewed by the St. Louis Court of Appeals, Lehmann v. Hartford Fire Insurance Co., 167 S. W. 1047, 1049 (5). The issue was ruled against defendant's contention by the opinion in the above case on the ground that the statute directed the penalty not as to the insured, but as given, "in *any action against any insurance company.*" (Italics ours.) We accept the ruling of the St. Louis Court of Appeals on this point.

The testimony complained of is that given in support of attorney fees.

In his direct testimony, Mr. Chilcott stated as follows:

"The case was tried in Clinton County and judgment was rendered in the Circuit Court of Clinton County and an appeal from that judgment was taken to the Kansas City Court of Appeals, and it was reversed and remanded and sent back for trial and change of venue was awarded after that."

All testimony as to penalty and attorney fees was objected to by defendant on the ground that such issue was not raised by the evidence. The above testimony was further objected to on specific grounds stated out of the presence and hearing of the jury, as follows:

". . . for the reason the witness had now told the jury that a judgment was rendered in the Circuit Court of Clinton County, Missouri, at the first trial of this case and it was appealed to the Kansas City Court of Appeals and was reversed and remanded and of course is telling the jury that the plaintiff won."

We conclude that the statement does not inform the jury that plaintiff won.

Further, special objection was made as allowance of attorney fees on grounds of assignment. We have passed upon that point.

We conclude that the testimony complained of does not constitute reversible error.

Defendant's points. six to seventeen claim error in refusal of instructions. The reasons stated are mostly general and argumentative. Frequently the reason assigned is to the effect that these offered instructions presented the defense's theory of the case and, therefore,

should have been given. The trouble lies in the fact that the law of this case, as to liability of defendant and waiver by reason of retaining the premium being issues of fact, was decided contrary to defendant's theory. The evidence as to such issues is substantially the same as in the former trial. Regardless of the above, the defendant throughout the trial is shown as persistently disregarding the law as declared by this court and refusing to accept our decision as *res adjudicata* on these points. Persisting in this course, the defense asks the unusual number of twenty-five instructions. Eight of these were given and we conclude that the eight given fairly declare the law as defendant is entitled to have it declared.

Several of these refused instructions are based upon defendant's theory that no issue was made on vexatious delay. This we have passed upon above. One of these instructions is concerning the question of no estoppel by reason of failure to return premium if part of insured goods remained in the first location. As to this issue, there was evidence to the effect that the property left was not included in the insurance and the following instruction was given at request of defendant, to-wit:

"The Court instructs the jury that if you believe and find from the evidence that Frank and Hallie Eddy did not move all of their furniture to Martin City, Missouri, then in no event is plaintiff entitled to recover a loss and damage more than a fair, reasonable market value of the property moved and in the house and destroyed by fire at the time of the fire."

As to the instructions not specifically discussed or set forth, suffice it to say, that the same contain segregated correct announcement on matters fully covered by the other instructions, still when read as a whole generally constituted a peremptory declaration contradictory of the law as declared in our first opinion.

Defendant in a reply brief contends that our former opinion is not *res adjudicata* as to any point urged in this case. We have above set forth our conclusion as to the issues of liability and estoppel and have set forth, *supra,* the language of our former opinion on these points.

There are questions in the present review that were not passed upon in the former appeal. However, we conclude that the given instructions, when taken as a whole, fairly cover the case and we find in no refused instruction elements that would have clarified rather than confused. This is especially so in respect to theory urged by defendant to the effect that the words "while located and contained as described herein and *not* elsewhere," used in the insuring clause, was not subject to interpretation permitting forfeiture.

In Luthy v. Northwestern Nat. Ins. Co., 20 S. W. (2d) 299, this court held that when notice of removal is given, consent is presumed if the insurance company fails to cancel policy. We have before con-

cluded that the reply attributed to Miss Rogers was evidence of consent.

The instructions given by the trial court in this case placed the full burden upon the plaintiff to prove his case. In a number of the refused instructions, some particular fact or some particular testimony of some witness is singled out and burden of proof as to such segregated matter is asked. We find no error in refusal under the showing made.

Defendant's eighteenth point is as follows:

"The trial court erred in refusing to sustain defendant's objections and defendant's motion to declare a mistrial and discharge the jury and to reprimand counsel for plaintiff for his highly prejudicial, unfair, improper, erroneous and inflammatory remarks and statements made to the jury and in the presence of the jury in his argument to the jury."

Under the appellate practice of this state, appellants are required to support points of alleged error with reasons stated. Further, the objection made in the trial court and the ruling thereon should be shown.

As to the above point (18), we are referred to six pages of the record and to defendant's assignment of error No. 26. Defendant's assignment twenty-six is an argumentative statement of nearly three printed pages wherein no objection appears but in one instance, and that is indicated (objection) without stating either the objection or ruling thereon.

By turning to the pages of the record that are indicated, we find that during the argument of one of plaintiff's counsel there were six objections made and ruled upon; two of which were sustained by the court, four overruled and exceptions taken. In only one instance was the court asked to declare a mistrial and in that instance the court merely sustained the objection and no exceptions were taken to his ruling.

The record shown as to the above instance is as follows:

"MR. DuBois (continuing): I say this suit was instituted in April, 1934. This fire occurred in October, '33, and this is April, '39, five years and six months and you can count it up and the records show they have been trying to get their money. They have a million dollars on their side of the case and of course they can carry on—

"MR. TRIPPE (interrupting): I object to that argument as being improper and ask the court to sustain this objection and ask the court to declare this a mistrial and to discharge the jury.

"MR. DuBois (continuing): Anyway, they have a million dollars to carry on their litigation in this case.

"THE COURT: The litigants have a right to have their matters determined in court. I will sustain the objection."

No request to reprimand counsel is shown.

The trial court has much better opportunity to judge as to the matters involved in defendant's point eighteen. The court made the rulings at the time and in passing upon the elaborate motion for a new trial again had the matter before him for consideration and has ruled adversely to defendant's contention of error.

Under the showing made, we do not feel justified in convicting the trial court of error in the matter. We, therefore, rule against defendant on its point eighteen.

The insistency and persistency of able counsel on both sides is shown in the record and briefs herein. This is the second verdict by jury in favor of plaintiff. We conclude that there is not such error shown as would justify a reversal. Judgment affirmed. All concur.