CITICORP INDUSTRIAL CREDIT, INC., a Delaware corporation, Plaintiff,

v.

FEDERAL INSURANCE COMPANY, a New Jersey corporation, Defendant.

No. 86 C 4770.

United States District Court, N.D. Illinois, E.D.

Nov. 12, 1987.

Thomas A. Roberts, Georgia L. Vlamis, Stephen C. Carlson, Sidley & Austin, Chicago, Ill., for plaintiff.

Douglas Reimer, Kearney W. Kilens, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Citicorp Industrial Credit, Inc. ("Citicorp"), filed this two-count diversity action for breach of an insurance contract against defendant, Federal Insurance Company ("Federal"). This matter comes before the Court on Federal's motion to dismiss both counts of Citicorp's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Federal's motion to dismiss is denied in its entirety.

### I. FACTS

On February 21, 1985, Federal issued Crime Insurance Policy Number 81038711 ("the policy") to Select Brand Industries, Inc. ("SBI") as the primary insured. Sections 1.1 and 1.4 of the policy require Federal to indemnify the insured for all losses resulting from acts of forgery committed by an employee of the insured during the effective term of the policy. Sections 6.2(E) and (F) generally provide that the policy shall terminate upon assignment.

Approximately eight months after the policy was issued, on October 3, 1985, Citicorp took possession of and foreclosed upon the assets of SBI pursuant to a loan agreement which had been executed between Citicorp and SBI on November 20, 1984. Under the terms of the agreement, Citicorp acquired all of SBI's accounts re-

ceivable, general intangibles, contract rights, and other rights to payment. Shortly after acquiring SBI's assets, Citicorp conducted a preliminary examination and audit of SBI's books and records. The audit and subsequent investigations revealed that a former SBI employee, through either forgery or improper endorsement, had caused ten checks totalling $38,429.31 to be drawn from SBI's operating account and paid to himself between July, 1985 and September, 1985. Each of these instances of defalcation occurred before Citicorp acquired SBI's assets.

After becoming aware of these instances of defalcation, Citicorp promptly notified Federal and requested that the claims be processed. By letter dated January 8, 1986, Federal advised Citicorp that Federal could not respond to these claims because the policy had terminated when Citicorp acquired SBI's assets pursuant to the non-assignability provisions contained in Sections 6.2(E) and (F) of the policy. Yet, on February 12, 1986, Federal wrote to Citicorp stating that coverage under the policy would terminate 30 days after receipt of Federal's letter.

Based upon these facts, Citicorp filed a two-count complaint against Federal. In Count I of the complaint, Citicorp, asserting its rights as assignee of the policy, seeks indemnification for the loss. In Count II of the complaint, Citicorp, also as assignee, seeks to recover punitive damages and attorneys' fees from Federal pursuant to Section 375.420 of Vernon's Annotated Missouri Statutes as a result of Federal's refusal to pay the loss "without reasonable cause or excuse." Mo.Ann.Stat. § 375.420 (Vernon 1986). Federal has moved to dismiss both counts of the complaint.

1. Since this is a diversity action, we are required to apply the law of Illinois, including its prevailing conflict of laws rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). In this case, Missouri is the state in which the insurance contract was negotiated and executed, and the parties appear to agree that it bears the "most significant relationship" to this controversy.

## II. DISCUSSION

In ruling on Federal's motion to dismiss, the Court must accept all well-pleaded allegations of the complaint as true. *See Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). In addition, the Court must view those allegations in the light most favorable to Citicorp. *Id.* Guided by these standards, we review the merits of Federal's motion to dismiss.

### A. Action for Indemnification

Citicorp has filed this action in its capacity as assignee of the crime insurance policy. Federal contends that Citicorp lacks standing to do so because the policy, by its own terms, terminated upon assignment pursuant to Sections 6.2(E) and (F). In response, Citicorp argues that it may collect under the policy notwithstanding the provisions prohibiting assignment since the loss occurred prior to assignment. The parties agree that the loss occurred prior to assignment, though it was not discovered until after assignment.

In deciding this issue, we look to the law of Missouri.[1] The Missouri Supreme Court addressed this issue in *Magers v. National Life & Accident Ins. Co.*, 329 S.W.2d 752 (Mo.1959). In *Magers*, the insurer argued that a prohibition against assignment in a policy precluded the insureds' assignee from collecting on claims which had matured prior to assignment. The Kansas City Court of Appeals[2] disagreed and ruled in favor of the assignee. On appeal, the Missouri Supreme Court upheld the appellate court's ruling, asserting:

As a general rule, an assignment made by the insured after the event has occurred on which liability under an insurance policy is predicated does not violate

*See generally Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 803–04 (N.D.Ill. 1985). That agreement is sufficient to make the law of Missouri govern. *See City of Clinton, Illinois v. Moffitt*, 812 F.2d 341, 342 (7th Cir. 1987).

2. The intermediate appellate court in Missouri is known as the "Kansas City Court of Appeals."

a policy provision prohibiting assignment of the policy or its benefits.

*Id.*, 329 S.W.2d at 756. In arriving at this conclusion, the Missouri Supreme Court adopted the reasoning of the Kansas City Court of Appeals. *See National Life & Accident Ins. Co. v. Magers,* 319 S.W.2d 53, 55–56 (Mo.1958). In its opinion, the appellate court noted that at the time of assignment, the insurer's liability had already become fixed. *Id.* Thus, the recognized and valid reasons for the prohibition of assignments without the consent of the insurer had ceased. *Id.* In effect, the insureds had not assigned the policy at issue, but instead, had assigned a matured claim or debt, which, like any other chose in action, was assignable. *Id.*

Using similar reasoning, the Eighth Circuit, applying Missouri law, arrived at the same conclusion. In *Ocean Accident & Guar. Corp. v. Southwestern Bell Tel. Co.,* 100 F.2d 441 (8th Cir.), *cert. denied,* 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1056 (1939), the court held that an assignee, who had acquired all rights of the insured pursuant to a bill of sale, could assert a claim for a loss before the assignment was made, notwithstanding a clause in the policy prohibiting assignment without the insurer's consent. The insurer argued that the "loss" to the insured did not occur until liability had been liquidated and reduced to judgment. Rejecting this argument, the court held that the "loss" occurred at the time of the insured's injury, rather than at some point thereafter, and reasoned:

> The Missouri rule, supported by sound reason and apparently by the weight of authority, is that, under a liability policy such as the one under consideration, the liability, the loss and the cause of action arise simultaneously with the happening of the accidental injury to the employee.

*Id.* at 446. *Accord Oklahoma Morris Plan Co. v. Security Mutual Cas. Co.,* 455 F.2d 1209, 1212 (8th Cir.1972).

The reasoning in *Magers* and *Ocean Accident* applies equally to this case. Here, the defalcation giving rise to the claim against the policy unquestionably occurred prior to Citicorp's acquisition of SBI's assets. As in *Magers* and *Ocean Accident,* once SBI's loss occurred, Federal's liability became fixed under the policy. Thus, the reasons for enforcing a clause prohibiting assignment disappeared. Once Federal's liability attached, it could no longer argue that it was relying on the personal characteristics of SBI or on the nature of its relationship with SBI in maintaining the insurance policy.[3]

Federal's reliance on *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.,* 693 F.2d 748 (8th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983) and *Silliman v. Chrisman,* 584 S.W.2d 441 (Mo.1979) in support of a contrary view is misplaced for two reasons. First, these cases fail to specifically refute or reconcile the case law cited above or to even address the issue of enforceability of non-assignability clauses within the context of an insurance policy. They merely reiterate general principles of law governing restrictions against assignment. Second, Federal fails to explain how the distinction it draws between the right to assign and the power to assign is relevant to this case or how these principles apply after a loss has occurred and liability has already been fixed.

Federal has advanced no other compelling reasons for enforcing the non-assignability clause. In fact, this Court is persuaded that enforcement of such a provision after the loss had occurred and liability had already become fixed would wreak an unconscionable result, for insurance companies reluctant to pay a claim could unfairly rely on such a provision to escape liability on a risk which had legitimately been assumed when the contract was executed.

---

**3.** This Court also notes that Federal's conduct in responding to Citicorp's claim was curiously inconsistent. Initially, in its letter dated January 8, 1986, Federal advised Citicorp that the policy terminated immediately upon assignment, or when Citicorp acquired SBI's assets. Four days later, however, in a subsequent letter, Federal notified Citicorp that SBI's policy would terminate within thirty days of receipt of that letter.

In sum, reviewing Citicorp's allegations in the light most favorable to it and accepting its well-pleaded allegations as true, this Court concludes that based on Missouri law, Citicorp has standing to sue as assignee of SBI's crime insurance policy. Accordingly, Federal's motion to dismiss the indemnification claim contained in Count I of Citicorp's complaint is denied.

### B. Statutory Action For Vexatious Refusal to Pay Claim

Federal also challenges Citicorp's standing to assert a statutory action for punitive damages and attorneys' fees under Section 375.420 of Vernon's Annotated Missouri Statutes. That section provides:

In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow *the plaintiff* damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Mo.Ann.Stat. § 375.420 (Vernon 1986).

Federal advances several arguments in support of its motion to dismiss this count of Citicorp's complaint: (1) that Citicorp lacks standing because the assignment terminated the policy; (2) that Citicorp as assignee cannot avail itself of the statutory remedy for punitive damages and attorneys' fees, as it belongs solely to the insured; and (3) that, even assuming the

statutory remedy is assignable and can be asserted by Citicorp, the statute is inapplicable in this case because Federal had "reasonable cause" to question the validity of Citicorp's claim.

None of these arguments warrants dismissal of Citicorp's statutory claim.[4] We have already disposed of Federal's standing argument. As set forth above, under Missouri law, an assignment made by the insured after the loss occurs and liability has been fixed does not violate a policy provision prohibiting assignment. *See Magers,* 329 S.W.2d at 756; *Ocean Accident,* 100 F.2d at 446. Thus, Citicorp has standing to assert such a claim in its capacity as assignee.

■ Federal's contention that the statutory claim belongs solely to the insured and cannot be assigned fares no better. The cases interpreting the statute directly refute Federal's theory. Indeed, under Missouri law, a statutory claim for punitive damages and attorneys' fees is clearly assignable. *See Still v. Travelers Indemnity Company,* 374 S.W.2d 95 (Mo.1963) (where the court held that an assignment of claims under fire policies could include a claim for penalties for vexatious delay in payments due thereunder); *Bergerson v. General Ins. Co. of America, of Seattle, Wash.,* 235 Mo.App. 806, 148 S.W.2d 812, 820 (1941) (where the court held that the attorney's fees and the penalty under the statute requiring insured to pay for unwarranted and vexatious delays were assignable); *Lehmann v. Hartford Fire Ins. Co.,* 183 Mo.App. 696, 167 S.W. 1047, 1049–50 (1914) (where the court held that a claim for vexatious delay of insurer in paying a loss was assignable since the right to recover under the statute was not confined to "the insured," but was granted "in any action against any insurance company" to "the plaintiff.")[5] Consequently, the statu-

---

4. Although the Court is somewhat puzzled by Citicorp's failure to brief this issue, based upon our independent review of the statute and the case law interpreting it, we have concluded that Federal's motion to dismiss Count II should be denied.

5. These cases were decided under an older and slightly different version of the statute. During the course of revisions, however, the principal language of the statute has remained the same, and the particular phraseology which formed the basis for the court's ruling in *Lehmann* still

tory claim for punitive damages and attorneys' fees originally belonging to SBI could be, and was, validly assigned to Citicorp.

Finally, Federal contends that Citicorp's statutory claim for punitive damages and attorneys' fees should be dismissed because the statute is inapplicable. According to Federal, the statute predicates relief on an insurer's refusal to pay a loss "without reasonable cause or excuse." *See* Mo.Ann.Stat. § 375.420 (Vernon 1986). Since, Federal argues, it "had reasonable cause" to question the validity of Citicorp's claim, the statute does not apply. Whether Federal's refusal to pay the loss can be characterized as "reasonable," however, is a question of fact. *See Bergerson*, 148 S.W.2d at 819–20. Accordingly, the issue of Federal's "reasonableness" is not properly raised in a motion to dismiss pursuant to Rule 12(b)(6). Fed.R.Civ.P. 12(b)(6). Federal's motion to dismiss Count II of Citicorp's complaint is therefore denied.

### III. CONCLUSION

For the reasons set forth in this opinion, Federal's motion to dismiss is denied in its entirety.

IT IS SO ORDERED.

---

remains intact in the current statute. *See* Mo.

Ann.Stat. § 375.420 (Vernon 1986).