OLA F. PACK v. PROGRESSIVE LIFE INSURANCE COMPANY, A CORPORATION.—187 S. W. (2d) 501.

Kansas City Court of Appeals.   March 5, 1945.

(1)

2

*E. M. Arnold, Haymes & Dickey* for appellant.

4

*Ike Skelton, White & Hall* for respondent.

CAVE, J.—This is an action on two identical life insurance policies, each insuring the life of O. E. Pack in the sum of $1000. Plaintiff, the wife of insured, was named beneficiary. There was a judgment for plaintiff in the aggregate sum of $2338.84, from which defendant appeals.

It is insisted that the appeal should be dismissed for the reason the statement contained in appellant's brief does not comply with our rules.

The statement is longer than necessary and gives more prominence to the correspondence had between the parties than to the evidence of the plaintiff. However, the evidence of plaintiff is fairly stated. The facts are unusual and appellant, no doubt, thought it was necessary to give a somewhat extended history of the case. While, we think it was unnecessary for so much to be stated, we are able to get a fair understanding of the case from the statement, and do not think the penalty of dismissal should be imposed. [Nowlin v. Kansas City Public Service Co., 58 S. W. (2d) 324.] The motion to dismiss the appeal is overruled.

Plaintiff's amended petition was in conventional form, alleging that the policies were in force and effect on June 17, 1936, the date of O. E. Pack's death, and that due notice of his death and this claim was given to defendant; and that the plaintiff and insured, during his lifetime, performed all the terms and conditions required of them under the policies.

.Defendant's answer contained a general denial; and further alleged that the policies provided that the table of values and surrender options should be reckoned from January 2, 1928; and the last monthly premium paid on the policies was in the month of December, 1931, paying the premiums to January 2, 1932; that the policies lapsed and were not in force at the time of the insured's death; that notice and due proof of the death of Mr. Pack were never given to the defendant; that Mr. Pack, before his death, elected to take the cash surrender value of each of said policies, and that for such reasons the plaintiff was not entitled to recover.

Plaintiff's reply first denied all allegations contained in defendant's answer, and then admitted that on January 2, 1932, each of said policies had a cash and loan value of $69, and alleged that if the defendant attempted to lapse said policies on January 2, 1932, for nonpayment of premiums, said action was wrongful, illegal and void

in that said policies provided for the automatic payment of the monthly premium of $4.27 from the cash and loan values of said policies, which had been duly requested by the insured and agreed to by defendant.

The case was tried and submitted to the jury by the plaintiff on the theory' that the defendant wrongfully forfeited the policies for the nonpayment of the January 2, 1932, period, instead of applying the necessary amount of the reserve of $69 on each policy under the premium loan provision in accordance with an agreement made with the insured in the home office of the Springfield Company in December, 1931; and having wrongfully and unlawfully forfeited the policies, the insured was relieved from any further tender of premiums, and, therefore, the policies remained in full force and effect at the time of his death. She contends that her evidence supports the proposition that she and her husband made such an agreement with the defendant in December, 1931.

Among other things the defendant contends that even if plaintiff's evidence is sufficient to support such an agreement, nevertheless on January 25, 1932, the insured and his wife, the beneficiary, unequivocally elected to take the cash surrender value as provided by the policies; and that they made such an election at a time when they had the right to do so, and that such election was binding on defendant and fixed the rights and liabilities of the parties to the policy contracts.

Plaintiff argues that defendant's contention is erroneous for two reasons: ''First, the policies permit such election only in the event of a *default in premium* payment, and if the January 2nd premium had been paid from the policy reserve as a premium loan, as had been agreed on, there was no default and therefore no right to the election. Under such circumstances, a request for the cash surrender value would be a *mere offer* not binding or effective until actually *accepted* by the company and paid, which was never done; and, second, the letter relied upon by the defendant does not amount to a demand for the cash values, but merely is a statement of the insured's intention and clearly contemplates further negotiations and proceedings before the completion of the transaction.'' (Italics ours.)

Certain facts are admitted or stand undenied, viz: That the original policies were issued on August 19 and 20, 1919, by the Springfield Mutual Association, and were exchanged by the insured on January 2, 1928, for the present policies issued by the Springfield Insurance Company, and that the cash and loan values were to be calculated as of January 2, 1928; that in November, 1931, the defendant, an Arkansas corporation, took over all the business, policies and assets, and assumed the obligations of the Springfield Insurance Company. The policies provided for a monthly premium of $4.27 each, with a one-month's grace period; that the loan and cash surrender value

on each policy, after paying four years' premiums, was $69; that the last premium paid by Mr. Pack, or anyone for him, was in the month of December, 1931, which paid the premium on each policy to January 2, 1932. Each policy contained certain identical provisions, which are material to the issues involved. Section 3 provides for one month's grace for the payment of each premium after the first, and the insurance is to remain in force during such period.

Section 6 provides for *Cash Loans*; and the material part of that section is, "At any time after three full years' premiums have been paid and while this policy is in full force, *all due premiums having been paid,* the Company will advance to the Insured, upon proper assignment of this policy, and upon the sole security thereof, a *cash loan*. . . . The company, if it so elects, may defer the making of any loan, or *the paying of any cash surrender value* for a period of not more than six months after application therefor is made."

Section 7 provides for Automatic Premium Loan Benefit. The material part of this section is: "If an application for the automatic premium loan privilege, signed by the Insured, is received at the Home Office as a part of the application for this policy or as a separate request, before *default* in payment of any premium then and in such event, this policy shall not lapse or become forfeited by reason of non-payment, within the period allowed therefor of any premium due hereon. . . . In event of such non-payment the Company will advance the premium then due. . . ." (Italics ours.)

Section 8 relates to "Other Non-Forfeiture Provisions." The material part of that section is: "After premiums shall have been paid for three full years, *the Insured may on non-payment of any premium due thereafter elect within one month of such due date to accept any one of the following options:* (a) *The Cash Surrender Value,* which will be an amount equal to the reserve on this policy at such due date, . . ." or (b) a paid-up life policy; or (c) extended insurance. Immediately following options (a), (b) and (c) is this provision: "*If the insured does not elect the Automatic Premium Loan Benefit as provided in Section 7, and shall not elect within one month from such due date* either option (a) or (b) then the policy will automatically be continued in force as provided in option (c)." (Italics ours.)

Under the provisions of these policies, the insured could secure the *cash loan* only after three full years' premiums had been paid and *all due premiums were paid.* (Sec. 6, *supra.*) Whereas, he was entitled to elect to receive the *cash surrender value,* if three full years' premiums had been paid, provided he made the election *within one month* after the premiums *became due.* So it will be observed that the provisions under which insured was entitled to receive *a cash loan* or *the cash surrender value* are entirely different. In the first instance, all due premiums must have been paid; while in the second instance,

he must have failed to pay a due premium and then made his election within *one month after the due date.*

Under Sec. 7—(Automatic Premium Loan Benefit)—the insured could apply to the company for a loan out of his reserve to pay a premium or premiums, but this application must be made *before default in payment of any premium.* If such application is made *before default,* then the policy shall not lapse or become forfeited by reason of nonpayment, *within the period allowed therefor,* and the period allowed is one month from the due date. (Sec. 3, *supra.*)

From an analysis of the above provisions, it seems conclusive that when the premiums were not paid on January 2, 1932, the insured had certain fixed rights which the defendant could not deny him. These were: (1) He could pay the premiums in cash at any time during the grace period and keep the policies in force; (2) he could apply to the defendant to have the premium paid from the reserve or loan value, and the company would be compelled to do so; (3) he could elect to take *the cash surrender value* at any time during the grace period, and if he did so elect, the defendant's liability to pay the cash value would be established and fixed.

From the issues joined, as above indicated, the question for solution is, could and did insured elect to take the cash surrender value? It is conceded insured did not make written application to the defendant for a premium loan under Section 7. The plaintiff orally testified to the effect that she and her husband went to the office of the Springfield Insurance Company in December, 1931, and had a conversation with some lady in charge of the office about what was necessary for them to do to surrender the policies for the cash vulue, and also concerning the question of paying the premium from the reserve fund of each policy. Concede, for the moment, that her testimony is sufficient to support her contention that the insured made a request of the defendant, at that time, to pay the premiums from such reserve fund and that the defendant agreed to do so; nevertheless, under the admitted and undisputed letters written by the insured and signed by the plaintiff, does such December agreement aid the plaintiff?

On January 15, 1932, defendant wrote insured in response to a letter written by insured, but which letter is not in evidence, that, under the policies, the company had the right to defer "the payment of any cash surrender or loan for six months after application for either," and that it elected so to do, but suggested that if insured was having difficulty in paying the premiums that the company would forward him proper forms for relieving him of that burden; clearly referring to the premium loan provision. In response to that letter insured wrote defendant on January 25: "I am writing you in regard to our policys. *We have decided to take the cash surrender value.* We can't keep it payed up. We have it payed up four years and on my policy it will be $69 on a policy and $29 on my wifes policy. Let us

hear from you soon." On March 1st, the lady in the Springfield office wrote the defendant concerning the policies of Mr. and Mrs. Pack and, among other things, stated: "These people were in the office today, seeking to surrender their policy contracts, stating that they had not paid their premiums since December. . . . On March 7 the insured again wrote, stating, "I am writing you again in regard to our policies as to the cash surrender. . . . We need our money or part of it now anyway if you will send me the money on my policy No. 43591 which is $29 (the wife's) we have payed out a lot of money on these policies to have to wait so long to only get such a little back. We would be glad if you will ans so as to let us no what you are going to do about this. . . ." There is no evidence of a reply by the defendant to this letter. On July 6, the plaintiff and her husband wrote defendant that they had made application "to cash out above numbered policies, and under your letter of date January 15th, 1932—you elected to wait the term of six months, which you claimed was permitted under the terms of the policies. The six months period is up, and you will therefore send the proper forms and information for cashing and surrender of said policies." In response to the above letter, defendant on July 16 wrote Mr. and Mrs. Pack that their policies did not have any cash surrender value because they had not been paying the proper premium due to the fact that their ages were not correctly stated in the policies, and suggested that the company would take up the old policies and issue new ones. On July 20 plaintiff and her husband wrote defendant that they did not want to continue the policies but wanted the cash value "as set out in the policies," and if it was not paid they would turn the policies over to an attorney. On July 22, defendant wrote plaintiff and her husband declining to pay the cash surrender value but offered to settle the matter by payment of $5 on each policy. Apparently this ended the matter until June 25, 1941, when plaintiff employed attorneys and made demand for the payment of the policies, which was declined, and this suit followed.

The policies did not require that they be surrendered when the election to take cash value was made, or, for that matter, at any other time. The only requirement was that insurer "elect within one month of such due date to accept . . ." the cash surrender value.

The privilege to exercise the option of surrendering the policies for their cash value was one bought and paid for by the insured; such option is an offer contained in the policy contract and is from the company to the insured and it is his right to accept the offer, within a specified time, and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute. In this case the only limitation is that, as the policy provided, the insurance company may defer such payment for a period not exceeding six months, but that cannot affect the fixed liability. [Lipman v.

Equitable Life Assurance Society, 58 Fed. (2d) 15; Pacific States Life Insurance Co. v. Bryce, 67 Fed. (2d) 710; Mutual Life Insurance Co. v. Kaiser, 10 So. (2d) 766.] In the last cited case the Supreme Court of Mississippi collects the authorities of this country and announces the accepted rule to be:

"The privilege to exercise the quoted option was one which was bought and paid for by the insured, and was at all times irrevocable by the company so long as the policy remained in force. When the insured elected to exercise the option by an unqualified notification to the company to that effect, the obligation of the company became thereupon a matured indebtedness to the insured for the amount of the cash surrender value, and any contingent liability thereby came to an end. The company would have no right or option or privilege to reject the unconditional notification of the exercise by the insured of his right to accept the cash surrender value, and when so notified in unqualified terms the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation,—a matured debt with all other obligations merged into it. The authorities seem to be uniform in so holding." (Citing many cases.)

The failure of the defendant to pay the amount of the cash surrender value was a breach of contract, but it does not follow from the fact that a contract is breached that there never was a contract. To construe an election to take the cash surrender value as a mere offer to the company, subject to rejection or lapse, would be to warp the plain terms of the contract and to deny the insured a right he had paid for. [Pacific States Life Ins. Co. v. Bryce, *supra.*]

We are not here discussing or deciding the question of whether the insured would have been entitled to or did rescind the contract because defendant failed to make payment. Such question is not before us.

Plaintiff contends that the policies permit such election only in the event of a *default* in premium payment, and if the January 2nd premium had been paid from the reserve fund as a premium loan, as had been agreed on, then there was no *default* and, therefore, no right to the election. As discussed above, the option for cash surrender value did not require that the premium be in *default* before election; the only requirement was that is not be paid when *due* and the election made "within one month after the due date."

With reference to the contention that if the premium had been paid on January 2nd from the reserve, then there would have been no default. It must be kept in mind that the automatic premium loan provision would not require the defendant to pay the premium on its due date, but merely to advance it in time to prevent a default prior to the expiration of the grace period. [Cleaver v. Central States Life Ins. Co. (Mo.), 142 S. W. (2d) 474, 480.] We understand plaintiff admits this to be the rule. If so, it cannot be successfully con-

tended that, as a matter of law, the premium was paid on January 2nd, and therefore not due when insured made his election.

To support her contention that insured's letter of January 25 amounted to a mere offer and not an election, plaintiff relies on Fidelity Mutual Life v. Heltsley, 71 S. W. (2d) 1017, 254 Ky. 453, and Murphree v. National Life and Accident Insurance Co. (Miss.), 150 So. 534. In the Heltsley case the Kentucky Court of Appeals was discussing a policy which entitled the insured to the cash surrender value "after default in the payment of the premium" and the offer to surrender the policy for the cash value was made by the insured prior to *default*. The court properly held that the policy did not give him any such right; consequently he undertook to make his election before his right to do so came into existence. The contrary is true in our case.

In the Murphree case the court was discussing a set of facts where the policy definitely gave an insurance company sixty days within which to pay the cash surrender value after an election by the insured was made; but the insured's proposal was, at the time he made his election, to "obtain at once the cash." The court properly held that such a proposal was not in accordance with the terms of the policy but was a new and different offer, which the company had a right to accept or reject. In the instant case the insured made his election at a time when he had a right to do so, and after he had received defendant's letter of January 15, advising him that under the policies the company may choose not to pay the cash surrender value for a period of six months and that it had elected so to do. In his letter of July 6, 1932, insured stated, ". . . The six month period is up and you will therefore send the proper forms and information for cashing and surrender of said policies. . . ." In all of insured's correspondence there was no mention of his desire or request that the defendant pay the premium from the reserve fund, but his assertions were that he did not want to keep up the policies but wanted the cash surrender value. We do not consider the two cases relied on by plaintiff to be in point.

We conclude that the admitted and undisputed evidence compels but one conclusion, and that is, that the insured definitely elected to take the cash surrender value of the policies at a time when he had a right to make such an election, and that such election made a binding contract between the insured and the defendant. The fact that the defendant did not pay the cash value in accordance with the policies may be morally reprehensible, but in law it is a breach of its contract. It is unnecessary to discuss other questions raised.

It follows that the judgment should be reversed and the cause remanded. All concur.