Hugh H. MAGERS, Assignee, Respondent,

v.

NATIONAL LIFE & ACCIDENT INSURANCE COMPANY, a Corporation, Appellant.

No. 47468.

Supreme Court of Missouri,

En Banc.

Dec. 14, 1959.

Paul Van Osdol, Jr., Robert F. Redmond, III, Kansas City, Terrell, Hess, Van Osdol & Magruder, Kansas City, of counsel, for appellant.

R. C. Southall, R. J. Southall, Kansas City, for respondent.

STORCKMAN, Judge.

This is an action by an assignee to recover the cash surrender values of certain policies of industrial life insurance which had lapsed for default in payment of premiums. The trial court found in favor of the plaintiff and its judgment was affirmed by the Kansas City Court of Appeals. As styled there it is reported, National Life & Accident Insurance Co. v. Magers, Mo. App., 319 S.W.2d 53. On application of the defendant Insurance Company, the cause was transferred to this court pursuant to Art. V, § 10, Constitution of Missouri, 1945, V.A.M.S.

The plaintiff sued in twelve counts each involving a separate policy of industrial insurance issued by the defendant Insurance Company; four of the counts were dismissed by the plaintiff at the trial. Judgment was rendered on the remaining eight counts for the cash surrender value of each policy, ranging in amounts from $2.45 to $84.99, for a total judgment of $342.22. At the trial it was stipulated that all eight of the policies prior to their assignment to the plaintiff had lapsed for nonpayment of premiums; that the computations furnished by the Insurance Company were the correct cash surrender values which had accrued to the credit of the insureds under each of

the lapsed policies and that such cash values had not been paid.

The evidence in the case consisted of the testimony of the plaintiff and certain documents including the insurance policies sued on, and two instruments signed by each of the policyholders, the first purporting to be in the nature of a power of attorney, and the second an assignment. Plaintiff testified that he was an insurance actuary engaged, among other things, in the evaluation of insurance policies and the collection of amounts found to be due thereon. He advertised his services as an actuary in local newspapers and all of the persons insured under the policies came to his office. He testified that they told him that they had attempted to get the cash value from the Company and had been unable to do so. In the plaintiff's office the policyholders signed the first document referred to which was on a printed form and was entitled "Employment Agreement, Power of Attorney in Fact, and Assignment." The plaintiff then made demand upon the defendant Insurance Company for the cash surrender value and upon payment being refused he secured from each of the policyholders the second document which was also upon a printed form and entitled "Affidavit and Assignment."

The plaintiff's testimony given on Count 2 as to the method of handling that claim is fairly typical of his testimony on all the other counts. It is as follows:

"Q. Handing you Plaintiff's Exhibit 6–B, I will ask you if that is the power of attorney which they executed to you. A. It is.

"Q. Acting under that power of attorney did you make demand on the defendant for payment of the cash surrender value of the policy? A. I did.

"Q. Did they pay you? A. They did not.

"Q. Did you then have the cash surrender value assigned to you for the purpose of bringing a suit on it? A. I did.

"Q. Handing you Plaintiff's Exhibit 6–C, I will ask you if that is the assignment which they executed for the purpose of bringing this suit. A. It is."

Each of the policies, except the one sued on in Count 2 of plaintiff's petition, contained a condition in substantially the following language: "Any assignment or pledge of this Policy or of any of the benefits thereunder shall be void and of no effect." In the trial court and the court of appeals there was an issue of whether the amount due under Count 2 had been paid. In this court the appellant has dismissed its appeal as to Count 2 and we are concerned only with the seven policies which have the condition against assignment of the policy or any of its benefits.

The findings of the court as to the legal effect of the agreements executed by the policyholders are typified by the one made on Count 6 which is as follows:

"The Court finds that on the 2nd day of November, 1954, the said policy had a cash surrender value of $53.56 and that on the same date the said insured entered into a written agreement with plaintiff in which she empowered him to collect this cash surrender value for her. The Court finds that on the 16th day of November, 1954, the plaintiff served a copy of said agreement on defendant and demanded payment of said cash surrender value but that the defendant refused payment thereof.

"The Court finds that the said written agreement between the insured and plaintiff, entitled in the evidence an 'Assignment', was in truth and in fact a mere Power of Attorney and Trust Agreement for collection purposes, empowering the plaintiff as Trustee to act for and on behalf of the insured to collect said cash surrender value, and

that such agreement did not violate the provision in said policy against assignment thereof."

■ Appellant's brief in this court directs its claims of error to the opinion of the court of appeals. We will treat these as assignments against the trial court since on transfer the appeal is considered as if originally taken to this court. Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 818[1].

The points relied on by appellant are that the court erred in finding that an assignment of rights and benefits under the policies had been accomplished contrary to the express provisions of the policies because (1) the general law of contracts is applied to insurance contracts in this state except where a statute or public policy dictate otherwise, (2) the subject matter of the assignments were benefits under the policies and not of liquidated, matured choses in action, and (3) the provisions prohibiting assignment of the policies and benefits thereunder are not contrary to public policy.

It is apparent from the findings and judgment of the trial court that it did not hold the policy provisions against assignment of "the policy or benefits thereunder" to be contrary to public policy or any statutes of the state. On the contrary the trial court, as well as the court of appeals, assumed the validity of these policy provisions but distinguished the rights involved, stating as quoted above, that the agreements and the action taken thereunder "did not violate the provision in said policy against the assignment thereof." Therefore we need not be concerned with appellant's sub-points (1) and (3) referred to above. This leaves for consideration the question of sub-point (2) above, whether the claims presented are matured choses in action which are not controlled by the policy provision against assignment.

A specification of the kind of life insurance policies involved may be helpful. Sec-

tion 376.690 RSMo 1949, V.A.M.S., provides that: "Industrial or prudential life insurance companies under the meaning of sections 376.680 to 376.760 are such life insurance companies that issue policies not exceeding five hundred dollars in amount, the premiums on which are computed at a weekly rate and are collected and paid weekly under the terms of the policies of the company issuing the same." Such companies "may also issue life policies, not exceeding one thousand dollars in amount, the premiums on which shall be computed at a monthly rate," and shall be so paid. The appellant stresses the special character of industrial insurance, but does not demonstrate that in the circumstances of this case it is entitled to any different treatment than policies for a larger amount on an annual premium basis.

All of the policies in question have a provision for a cash surrender value substantially similar to that in Policy Exhibit 6-A which reads as follows: "After this policy has been in force with premiums paid for five full years, the Insured may, by making written application and surrendering this policy to the Company, obtain a Cash Surrender Value. If application therefor is made within thirteen weeks of the due date of the first premium in default, the amount of such Cash Surrender Value shall be as set forth in the table on the following page; otherwise the amount shall be the equivalent of the reserve on the Extended Insurance or Paid-Up Life Insurance at the date application therefor is made." Certain nonforfeitable features, of which the provision for cash surrender values is one, are required by law to be contained in specified life insurance policies including industrial policies. See section 376.670 and particularly paragraphs 1(4), 4 and 12. The appellant does not contend that the insureds are not entitled to the cash surrender values but only that it may not be collected in the manner sought to be utilized in this case and stands upon the policy provision against assignment of the "policy or any of its benefits."

■ As a general rule, an assignment made by the insured after the event has occurred on which liability under an insurance policy is predicated does not violate a policy provision prohibiting assignment of the policy or its benefits. The authorities supporting this rule are set out at length and discussed in the opinion of the Kansas City Court of Appeals and need not be repeated here. It should be pointed out, however, that there may be situations in which the right of a beneficiary to assign proceeds of life insurance may be properly limited or prohibited altogether. The case of Mullin v. Trolinger, 237 Mo.App. 939, 179 S.W.2d 484, cited by the appellant was such a case. It was a creditor's suit to subject the proceeds of two life insurance policies to the payment of the plaintiff's judgment debt. After the death of the insured the Company held the proceeds of the policies under a settlement option selected by the insured whereby the Company was required to pay the proceeds in monthly installments to the beneficiary, the insured's son, subject to the further provision that the beneficiary could not "commute, transfer or encumber any unpaid instalments nor withdraw the amount placed in trust except upon the written authority of the insured filed with the Company during his lifetime." 179 S.W.2d 484, 486. The restraining clause was held to be valid as being in the nature of a spendthrift trust imposed by the insured. This is clearly distinguishable from the case at bar where the Company, during the lifetime of the insured, is setting up and claiming the benefit of a provision against assignments in defense of the payment of the cash surrender value to the agent and assignee of the insured.

The appellant asserts that the Kansas City Court of Appeals "took the unprecedented position that upon the lapse of a life insurance policy, the contract became executed, and a matured claim (for the cash surrender value) arose which could be assigned as a chose in action". We do not understand the opinion to so hold.

The evidence shows that more than a mere lapse occurred and the decision should not be so limited.

The appellant's position is that the insureds had alternative rights and benefits under the lapsed policies consisting of automatic extended insurance, or, if they so elected, paid-up insurance or the cash surrender value. The Company says that there is no showing that the insureds had elected to take the cash values at the time the assignments were made because "there is no evidence that *insureds* had made written application for the surrender value, nor had any of them surrendered the policies." We do not think these requirements can be as strictly construed as the appellant contends. For instance, it appears that two of the policyholders involved in this case can neither read nor write. Obviously, such a person would require assistance in meeting the policy requirements.

Nor do we think it is necessary that physical delivery of the policy be made to the Company at the time and as a part of the demand. The policyholder should be entitled to retain the policy which is his evidence of the debt until the Company indicated its willingness to pay and then deliver it concurrently with the payment of the cash value and not precedent to it. Fidelity Mutual Life Insurance Co. v. Merchants' & Mechanics' Bank, 5 Cir., 71 F.2d 777, 778[1]. Furthermore, lack of compliance with the surrender clause was not pleaded as a defense nor was it relied upon as a theory of defense at the trial.

The manner of exercising the option and the nature of the obligation created is well stated in Pack v. Progressive Life Insurance Co., 239 Mo.App. 1, 187 S.W.2d 501, 505[3], as follows: "The privilege to exercise the option of surrendering the policies for their cash value was one bought and paid for by the insured; such option is an offer contained in the policy contract and is from the company to the insured and it is his right to accept the offer, within a

specified time, and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute." In the Pack case it was held that since the insured had elected to take the cash value the beneficiary could not thereafter recover the death benefits although the company had failed to pay the cash surrender value.

The narrow question here presented then is whether under the evidence a sufficient demand has been made to satisfy the policy condition and to render the cash value due and payable.

The evidence with respect to the demand shows that the plaintiff further testified: "These people told me they had attempted to get the cash value when they came into my office, and that is what we were interested in"; "They were after the cash value which they had previously attempted to get and was unable to get it"; and "The woman wanted the cash value and that is what she told me and was determined to get it, even though she had attempted to get it and failed." There was other testimony of similar import and no evidence in contradiction.

The plaintiff first had the policyholders execute agreements having the essential elements of a power of attorney and reading in part as follows: "Know All Men By These Presents, That [here the name of the policyholder is inserted] of the City of ——— County of ——— State of ——— has, and does hereby employ Hugh H. Magers, Jackson County, Missouri, as my, or our Agent, and as my, or our Assignee, That I, or we do by these presents: make, constitute, and appoint Hugh H. Magers, Jackson County, Missouri, my, or our, true and lawful Attorney in Fact, for myself, or for ourselves, and in my name, or our names, place and stead, to handle any and all matters, regarding any values due, found due, or to become due, by virtue of any Instrument, Instruments, Property, or Properties, as follows to-wit: [here the policies are described] giving and granting unto my, or our Employ, as my, or our Agent, Assignee, and Attorney in Fact, every power and authority deemed necessary by him, to do and perform every act and thing whatsoever requisite and necessary to be done in and about all premises as fully to all intents and purposes as I, or we, might or could do if personally present at the doing thereof, with full power of substitution and revocation, hereby ratifying and confirming all that my, or our Employ as Agent, Assignee, or Attorney in Fact, or his substitute might lawfully do, or cause to be done by virtue hereof, even to the signing of my, or our names, in my, or our place and stead, wherever, or whenever, deemed necessary, and to direct, receive, open and handle any, and all correspondence, or United States mail in his name, or in my, or our names, through such Post Office address as my, or our employ, as Agent, Assignee, or Attorney in Fact may choose to use, for any purpose in obtaining the payment of any sum found due, or to become due, by virtue of any instrument, instruments, property, or properties listed above." The agreement further provided for a fee of 50% of the amount collected, that the policyholder would not become obligated for any cost or expense and that assignments of instruments and property would be in such form as required by the plaintiff and would be in accordance with his employment.

The plaintiff testified that he served a copy of the power of attorney on the Company and made written demand for payment of the cash values of the policies which demands were either refused or ignored. The documents in evidence, entitled "Affidavit and Assignment", in substance purport to assign the policies to the plaintiff and to authorize him to collect the cash values and surrender the policies. The plaintiff brought suit in his name as assignee.

■ By the terms of its policy, the Company agrees that "the Insured may,

by making written application and surrendering this policy to the Company, obtain a Cash Surrender Value." There appears to be no valid reason why an insured, having decided to surrender his policy, cannot authorize some other person to make the collection of the cash value and surrender the policy. No authorities have been cited to support the contention that the "written application" must be made personally by the assured and we have found none so holding. "Generally speaking, in the absence of any statute otherwise providing, powers or authorities may be created to do any act which the donor himself might lawfully perform; * * *." 72 C.J.S. Powers § 3, p. 403. So far as we have been able to discover, there is no statute prohibiting an agent acting under a power of attorney from demanding and collecting cash surrender values for the holder of a policy of life insurance. The evidence was sufficient to support the findings that applications for the cash surrender values were made pursuant to policy requirements and that the obligation of the Company to pay the cash surrender values became absolute.

In these circumstances the assignments in aid of the collection of the matured claims did not violate the policy provisions and the suit was properly brought in the name of the plaintiff as assignee. Section 507.010 RSMo 1949, V.A.M.S.; Milliken-Helm Commission Co. v. C. H. Albers Commission Co., 244 Mo. 38, 147 S.W. 1065, 1067[2]; Truitt v. National Life & Accident Ins. Co., 236 Mo.App. 1036, 161 S.W.2d 683, 686; Chambers v. Metropolitan Life Ins. Co., 235 Mo.App. 884, 138 S.W.2d 29, 40; Schepman v. Mutual Benefit Health & Accident Ass'n, 231 Mo.App. 651, 104 S.W.2d 777, 784; Cohn v. Guardian Assurance Co., 68 Mo.App. 376; Prudential Insurance Co. of America v. Bohlken, D.C., 40 F.Supp. 494. We find no previous Missouri case involving the assignment of cash surrender values under a policy having a provision against assignment of the policy or its benefits,

but for such a case where recovery was permitted see Metropolitan Life Insurance Co. v. Brown, 25 Tenn.App. 514, 160 S.W. 2d 434, 438.

We have examined all of appellant's assignments of error and find them without merit.

The judgment is affirmed.

All concur except EAGER, J., who concurs in the result.