**Doris L. GREEN, Appellant,**

v.

**AMERICAN NATIONAL INSURANCE
COMPANY, Appellee.**

No. 14844.

Court of Civil Appeals of Texas,
San Antonio.

March 18, 1970.

Niland & Niland, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, James L. Gallagher, El Paso, for appellee.

KLINGEMAN, Justice.

This is a dispute between the beneficiary of a life insurance policy, on the life of her husband, and the insurer as to whether the acts of the husband, during his lifetime, in attempting to secure the cash surrender value of the policy effected a cancellation of the coverage thereunder on his life. Both appellant, Doris L. Green, and appellee, American National Insurance Company, moved for summary judgments. The trial court granted appellee's motion for summary judgment and entered its judgment that appellant take nothing against appellee.

Appellant's husband, Carson H. Green, was the insured under a life insurance policy issued by appellee in the amount of $10,000, with appellant the named beneficiary. On May 26, 1965, the insured and his wife, Doris L. Green, gave an assignment of said life insurance policy as collateral security to Bassett National Bank of El Paso to secure a loan. Some time prior to the maturity date of the loan, which was February 8, 1968, the loan was paid off and the policy returned by the bank to Carson H. Green. Thereafter, by undated letter received by the insurer on March 4, 1968, the insured advised the insurer that he wanted to surrender the policy for its cash surrender value and returned the insurance policy with his letter. In response to such notification, the insurer wrote Green on March 13, 1968, acknowledging receipt of the policy and the letter requesting the cash surrender value, and in this letter stated that their records indicated that such policy had been assigned to the Bassett National Bank of El Paso, and that an officer of the bank must join him in executing an enclosed surrender application, or else forward a release of such assignment. Such letter further stated that if Green decided to apply for a loan and continue the insurance in force, no special form was required, but that they would have to have a letter from the bank authorizing such loan. Such letter closed with the statement, "We will hold our file pending."

Thereafter, in a letter dated March 3, 1968, which is obviously misdated and which both parties agree was probably written on April 3, 1968, in that it was received on April 8, 1968, Carson H. Green returned the completed surrender application to appellee, stating that the loan to which the policy had been assigned as security had been paid off, and that the Bassett National Bank no longer had any claim to such policy. The insured closed this letter with the statement that he was not interested in a loan on the policy but wanted the cash surrender value as soon as possible. On May 6, 1968, the insured died. The insurer was duly notified of his death and demand made for the face value of the policy. The insurer thereafter received a release from the bank on May 26, 1968, and a check for the cash surrender value of the policy was tendered to the

representative of Green's estate on June 6, 1968, which tender was rejected by the beneficiary.

The appellant's sole point of error is that the trial court erred in rendering judgment for appellee in that at the time of the death of the insured there was in full force and effect an insurance contract written by appellee for the amount of $10,000 on the life of insured. Appellant's basic contentions in support of such point of error are: (1) that the negotiations with regard to the cancellation of the insurance contract were never completed prior to the death of the insured and there never was a mutual agreement concerning the cancellation of the policy; (2) that by virtue of the collateral assignment of such policy from the insured to Bassett National Bank to secure a loan, the bank had the sole right to request the cash surrender value of the policy and receive the proceeds, and that at the time the insured made his request for the cash surrender value he had no authority whatsoever to cancel the policy.

The policy expressly gave Carson H. Green the right and option to cancel the policy for its cash surrender value at any time after it had been in effect for three years by (1) written request for its cash surrender value, (2) surrender of the policy. The Company reserved the right to defer payment of the cash surrender value for a period of not more than six months.[1]

There is ample authority to support the fundamental rule that an option contained in a life insurance policy is a continuing and irrevocable offer which becomes a binding contract when accepted by the insured, the subsequent death of the insured being irrelevant to the effectiveness of the election. Annotation, 15 A.L.R.3d 1321. While we have found no Texas decisions directly in point, the general rule is that when the insured elects to exercise the option to surrender the policy and collect the cash value by an unequivocal notification to the company to that effect, the obligation of the company thereupon became a matured indebtedness to the insured for the amount of the cash surrender value, and any contingent liability thereby came to an end. The company would have no right, option or privilege to reject the unconditional notification of the exercise by insured of his right to accept the cash surrender value, and when so notified in unqualified terms, the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation—a matured debt with all other obligations merged into it. Mercantile National Bank at Dallas v. Franklin Life Ins. Co., 248 F.2d 57 (5th Cir. 1957); Mutual Life Ins. Co. v. Kaiser (1942), 193 Miss. 581, 10 So.2d 766, and cases therein cited. The rule is stated in Pack v. Progressive Life Ins. Co., 239 Mo.App. 1, 187 S.W.2d 501, that "The privilege to exercise the option of surrendering the policies for their cash value was one bought and paid for by the insured; such option is an offer contained in the policy contract and is from the company to the insured and it is his right to accept the offer, within a specified time, and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute."

---

"(c) Cash Surrender Value. Within sixty days after the due date of the premium in default the owner upon written request and surrender of the policy may elect to receive a cash surrender value in accordance with the Table.

"If on or after the third policy anniversary the policy is in force under reduced paid-up endowment or extended term insurance it may be surrendered for cash at any time subsequent to the end of the grace period for the premium in default. The amount of this cash surrender shall be the present value at the date of surrender of the future insurance benefits guaranteed under the paid-up endowment or extended term insurance then in effect.

"The Company reserves the right to defer the payment of any cash surrender value for a period of not more than six months after receipt of written application therefor."

It is undisputed that the insured, Carson H. Green, made an unqualified notification to the insurer of the exercise of his right to accept the cash surrender value,[2] that he also surrendered the policy and made no further premium payments.

■ Appellant's contention that at the time the insured made his request for the cash surrender value he had no authority whatsoever to cancel the policy because of the collateral assignment made to the Bassett National Bank is without merit. It is undisputed that prior to the time insured notified the insurer that he desired to surrender the policy for its cash surrender value the loan to which the policy had been assigned as collateral security had been paid off. Our Supreme Court in Cawthorn v. Perry, 76 Tex. 383, 13 S.W. 268 (1890), held that a creditor to whom a debtor transfers a life insurance policy acquires no greater interest in the policy than such sum as will pay the debt and interest, and that the instrument of transfer to a creditor, no matter what form it assumes, must be construed either as a mortgage to secure the debt or a transfer of such part of the insurance money as would pay the debt with interest. In Farracy v. Perry, 12 S.W.2d 651 (Tex.Civ.App.— Waco 1929, writ ref'd), the Court stated: "The bank had only a lien on said policies regardless of the form of the assignment. Cawthon v. Perry, 76 Tex. 383, 13 S.W. 268; Coleman et al. v. Anderson et al. (Tex.Civ.App.) 82 S.W. 1057; Harde v. Germania Life Insurance Co. (Tex.Civ. App.) 153 S.W. 666." It is fundamental that the payment of a debt discharges the lien securing it. Perkins v. Sterne, 23 Tex. 561 (1859); Trane Company v. Wortham, 428 S.W.2d 417 (Tex.Civ.App.— Houston (1st) 1968, writ ref'd n. r. e.); Milburn v. Athans, 190 S.W.2d 388 (Tex. Civ.App.—Fort Worth 1945, writ dism'd); Stephens v. Moodie, 30 S.W. 490 (Tex. Civ.App. 1895, writ ref'd); 36 Tex.Jur.2d, § 29, Liens. In Spencer-Sauer Lumber Co. v. Ballard, 98 S.W.2d 1054 (Tex.Civ.App. —San Antonio 1936, no writ), it is stated: "The general rule seems to be universal that a lien is but an accessary to, or mere incident of, the debt secured by it, and is discharged and extinguished, ipso facto et eo instante, by payment of the debt by the person primarily obligated by contract therefor." See also Couch on Insurance, § 63:460, where it is stated that since the security interest created by the assignment of a life insurance policy as collateral security is secondary to the primary obligation of the debt, it follows that the security interest in the policy is discharged or terminated when the debt is itself discharged.

■ We hold that any interest the Bassett National Bank may have had in the insurance policy in question by virtue of the collateral assignment of the policy was extinguished by the payment of the debt, which was prior to the time that the insured notified the insurer of his election to surrender the policy and collect the cash surrender value, and that such notification effectively terminated the policy and obligated the insurer to make payment of the cash surrender value in accordance with the policy provisions applicable thereto.

The judgment of the trial court is affirmed.

2. (a) Undated letter received by appellee on March 4, 1968, in which the insured states "I wish to surrender this policy for its cash value."
(b) Letter erroneously dated March 3, 1968, received by appellee on April 8, 1968, wherein the insured stated, "No, I am not interested in a loan on the policy. I would like the cash value as soon as possible."
(c) Written application for cash surrender value executed by insured on April 3, 1968, and received by appellee on April 8, 1968.