**FRANKLIN LIFE INSURANCE COM-
PANY, Appellant,**

v.

**Ofelia WINNEY et al., Appellees.**

**No. 14906.**

Court of Civil Appeals of Texas,
San Antonio.

May 19, 1971.

Rehearing Denied July 7, 1971.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellant.

Baskin, Casseb, Gilliland, Rodgers & Robertson, San Antonio, for appellees.

CADENA, Justice.

Appellees, Ofelia Winney and Otilia Diaz Winney, filed suit for death benefits due under a policy issued by appellant, Franklin Life Insurance Company, to Jorge S. Winney, deceased. Both appellees and appellant filed motions for summary judgment. Appellant claimed that only the cash surrender value of the policy was due, since, prior to his death, plaintiff had requested payment of the cash surrender value of his policy. The trial court granted appellees' motion for summary judgment, awarding them the face amount of the policy, and denied appellant's motion.

By letter dated April 5, 1968, the insured, Jorge S. Winney, requested that the insurer send the cash value of the policy at insurer's earliest convenience, and asked if it was required that he send the policy to the insurer. The insured was killed in an airplane crash in Mexico on April 10, 1968. The letter requesting the cash value of the policy, together with the policy, was received by insurer at its home office in Springfield, Illinois, on April 15, 1968. The envelope containing the request and the policy shows that it was mailed in Mexico City, Mexico, and bears a Mexican postmark of April 8, 1968, two days prior to the death of the insured.

Our holding in Green v. American National Insurance Company, 452 S.W.2d 1 (1970, no writ), is not controlling here. In *Green* we applied the rule that where an insurance policy empowers the insured, by his own unilateral act, to terminate the policy and receive its cash value, such provision constitutes a "continuing offer"

which, when accepted by the insured, terminates the policy and relieves the insurer of all other obligations other than to pay the cash value of the policy, even though, after such acceptance, the insured dies before the insurer delivers the cash value. 15 ALR 3d, Anno: Insurance—Options—Insured's Death, pp. 1317, 1321–24 (1967). In *Green* we were not required to determine whether actual receipt of the request for the cash value by the insurer was necessary in order to have an effective "acceptance" of the "continuing offer," since there the insurer had received the request before the insured died.

■■■ Mailing of an acceptance is frequently held to be sufficient to cause an offer to ripen into a contract from the moment the offeree deposits a properly addressed letter of acceptance in the mails. 17 C.J.S. Contracts § 52, p. 716. However, this rule is applicable only where the offeror expressly or impliedly authorizes the offeree to signify his acceptance by the act of mailing. An offeror can specify any mode of acceptance he pleases and can require that the acceptance of his offer shall not be operative until received by him. 1 Corbin Contracts, Acceptance and Rejection of Offer, Section 78, p. 333 (1963).

In cases where the policy provides that the insured may surrender the policy and receive its cash value by merely making a request for such value, a holding that the acceptance becomes operative upon mailing of the request would, perhaps, not be indefensible. But here the policy provision is quite different. The pertinent provisions are as follows:

" 'The Owner may terminate this policy and receive its cash value, less any indebtedness hereon, by written request at any time after the policy first has such a value.

" 'The Company reserves the right to defer the payment of any cash value * * * for the period permitted by law, but not to exceed 6 months after written request is received.' "

The policy defines "written request" as "a written request satisfactory to the Company, *filed at its home office in Springfield, Illinois*." [emphasis added]

Webster's Third International Dictionary of the English Language (1966 unabridged) contains the following definition of the word "file," among others not here pertinent: "to deliver (as a legal paper or instrument) after complying with any condition precedent (such as the payment of a fee) to the proper officer for keeping on file or among the records of his office." Substantially the same definition was adopted by Justice Wheeler in Holman v. Chevaillier, 14 Tex. 337, 339 (1855), where he pointed out that "to file" merely means placing the instrument in the custody of the proper officer.

■■■ There are numerous authorities holding that where an instrument is required to be "filed" at a certain place or with a designated person, the requirement is not satisfied by the deposit of the instrument in the mails but only by its receipt at the designated place or by the specified person. "Filing, it must be observed, is not complete until the document is delivered and received. 'Shall file' means to deliver it to the office, and not send through the United States mails." United States v. Lombardo, 241 U.S. 73, 76, 36 S. Ct. 508, 509, 60 L.Ed. 897 (1916). See the numerous authorities collected in 16A Words and Phrases, "File", pp. 107–117, 119–123, 137–138 (1959).

This interpretation of "file" is not limited to cases where the instrument is to be filed with a governmental official. In E. M. Boerke, Inc. v. Williams, 28 Wis.2d 627, 137 N.W.2d 489 (1965), the right of a real estate broker to recover a commission depended on whether or not he had "filed" a list with the owner of the land prior to January 15, 1957. On January 15, 1957, the broker mailed the list to the owner,

who received it several days later. In holding that the broker was not entitled to recover, the Wisconsin Supreme Court said: "To construe or define 'mailing' as 'filing' is to ignore the plain meaning of the word. Mailing merely initiates the process by which an article in the due course of the post will be delivered. The requirement of the contract in question is that the notice be filed or delivered to the party offering property for sale." (137 N.W.2d at 493) The court pointed out that there was nothing to suggest an agreement that the list be merely mailed, rather than "filed."

■ Since the request for the cash value of the policy was not received at the home office of appellee until after the death of the insured, the requirement that such request be "filed" at such home office was not fulfilled during the lifetime of the insured. At the time of the death of the insured, then, the policy had not been terminated or surrendered, but was in full force and effect.

The judgment of the trial court is affirmed.